RANY
v.
THE GOVERN-
OR.

Monday,
May 25.

---

### RANY and Another v. THE GOVERNOR.

The record of a judgment by default against the defendant for want of an appearance, should show that the process had been served.

In debt on a bond conditioned for the performance of covenants, the breaches were assigned in the declaration, and a judgment by default was taken against the defendant. *Held*, that the breaches should be proved and the damages assessed, before the rendition of final judgment.

Debt against a sheriff and his sureties on a bond dated in *March*, 1820, conditioned for the faithful discharge of the sheriff's duties until the then next *August* election, and until his successor should be elected and qualified. The declaration assigned as a breach, that the sheriff had failed to pay over, &c. the revenue of the county *for the year* 1822, without an averment that no successor to the sheriff had been elected. *Held*, that the declaration contained no cause of action against the sureties.

Although the sheriff, in such a case, may have been elected his own successor, and may have neglected to qualify under the new appointment, still his sureties in the bond on which the suit was brought, are not liable for his acts after he had received his new commission.

May Term,
1835.

RANY
v.
THE GOVERN-
OR.

Monday,
May 25.

ERROR to the *Martin* Circuit Court.

STEVENS, J.—On the third of *March*, 1820, *Julius Johnson* together with *Joseph Rany* and *Philip Davis*, his sureties, made their bond to *Jonathan Jennings*, governor of the state of *Indiana*, and to his successors in office, by which they bound themselves to pay the sum of 5,000 dollars, conditioned that the said *Julius Johnson* should well and truly perform the duties and office of sheriff, &c. during and until the general election on the first *Monday* in *August* then next succeeding the date of the bond, and until a successor should be elected and qualified; and that he the said *Johnson* should observe the constitution and laws of the state, touching the said office of sheriff, &c., and should well and faithfully pay over, to the proper persons, all the money which might come into his hands by virtue of his said office, &c.

Afterwards, in the year 1826, suit was brought upon this bond, on the relation of the treasurer of the state of *Indiana*, against the obligors; and the declaration, after stating the bond and condition, assigns as a breach, that the said *Johnson* did not well and truly perform the duties of the office of sheriff, &c. from the date of said bond, during and until the general election in *August* then next ensuing, and until his successor was elected, qualified, &c.; and that he had not faithfully paid over to the proper persons all moneys which had come to his hands, &c.; and especially that he had neglected to pay over to the treasurer of the state 300 dollars, being the revenue assessed and by him collected in his county for the year 1822. To this suit *Johnson* appeared and *confessed the action. Rany* and *Davis* failed to appear, and judgment was rendered against them by default. Since the rendition of the judgment *Johnson* has died; and his sureties, *Rany* and *Davis*, the other defendants, against whom judgment was rendered by default, suggesting the death of *Johnson* on the record, prosecute this writ of error to reverse the judgment and proceedings, so far as they are concerned.

The judgment against these defendants must be reversed. Several errors exist authorising such a reversal. The most

May Term,
1835.

· RANY
v.
THE GOVERN-
OR.

prominent defects are,—1. Judgment is rendered by default for want of appearance, and the record does not show that any process issued, or was served on either of these defendants.—2. The bond declared on is a penal, official bond, the condition to which is spread upon the record, and the breaches assigned; yet there is judgment not only for the debt, but final judgment also for the damages sustained by reason of the breaches, without either proof or inquiry.—3. The declaration contains no cause of action against either of these defendants.

By the laws of the state, state and county officers that are elected by the people, are elected on the first *Monday* in *August*, annually, and when a vacancy happens, provision is made for the filling of the office until the first *Monday* in *August* then next ensuing. And as it respects the office of sheriff, the statutes in force from the year 1818 to the year 1824 provided, that if any vacancy should happen in the office of sheriff, or any sheriff elect should fail to give the required bond and surety, or take the required oath, &c. the governor should appoint and commission a person to fill the office until the next annual election day, &c.; and that the person so appointed should give the required bond, &c. Under these provisions, the bond in question was given, and appears to be in strict conformity in all things to the requirements of the several provisions. By this bond, these sureties became bound for the official acts of their principal, *Johnson*, from the third of *March*, 1820, until the first *Monday* in *August* of the same year, and until the successor, who might be elected, could be commissioned and sworn into office, &c.; which in no case could exceed more than 90 days after the day of the election. The sheriff at that time was the collector of the revenue, annually assessed on his county; and the transcript of the assessment roll was delivered to him for collection, in the month of *June* each year; and the sheriff to whom the transcript was delivered, had to complete the collection, although he might go out of office in the mean time. The transcript of the assessment roll for the year 1820, no doubt, came to the hands of *Johnson* for collection, in the month of *June*, 1820; and for his official duty in collecting and paying over the revenue of that year, his sureties were bound, although he might have gone, and no doubt did go out of office, under his then appointment, before he completed the collection. But this suit is not for the revenue of 1820, but for the year 1822,—two

years after the liability of these sureties undoubtedly ceased
under this bond.

It is, however, insisted that we should presume that no suc-
cessor was elected, and that the appointment of *Johnson* re-
mained valid and his sureties bound.   Such a presumption
would be not only violent, but it would be unreasonable and
unnatural.   It cannot be presumed that the people of a county
would omit to elect their sheriff for two successive years.  They
meet annually to elect county and state officers,—always mem-
bers of the legislature and many other officers; sometimes
members to congress; sometimes a governor and lieutenant
governor, &c.; and it is not to be presumed that they would,
when annually at the polls for these purposes, omit to elect a
sheriff; such a presumption cannot be indulged.   We feel con-
fident, that such an omission did not take place; but if it did,
it cannot be presumed; it should have been directly averred in
the declaration.

It is further insisted that *Johnson* might have been elected
his own successor, and failed to give new bond and surety, by
which failure, these sureties in this bond continued bound;
they being bound for his acts until his successor should be qual-
ified.   If such is the truth of the case, the record does not show
it.   There are no such averments in the declaration; and such
a state of facts cannot be presumed.   But suppose *Johnson* was
elected his own successor, and acted without qualifying under
his new commission, that would not make these men liable for
his acts after he received his new commission.   The liability of
these sureties ended the instant he received his new commission
under his election; and if he failed to qualify under that new
commission, the governor was bound to appoint some person
who would qualify, to fill the office until the next annual elec-
tion.

This position, as to the liability of these sureties, is sustained
and confirmed by numerous adjudications.

The case of *The United States* v. *Kirkpatrick et al.* 9 Wheat.
720, was a suit upon a bond which was given to the *United
States*, conditioned for the faithful, &c. discharge of the duties
of a collector of direct taxes, by *Samuel M. Reed*, who was ap-
pointed to that office.   *Reed* was afterwards appointed his own
successor, but never gave any other bond or security; and after
his re-appointment he became a defaulter.   It was held that the

new commission revoked and vacated the first; and that his sureties were only bound for his acts under the first commission, and not under the new commission.

The case of *Bigelow* v. *Bridge*, 8 Mass. Rep. 275, was an action of debt on a bond given by *Bridge* for the discharge of duties, &c. as county treasurer. The office was elective annually, and *Bridge* was elected his own successor for a number of years, but never gave any bond except the first year. The Court decided that his sureties were only liable for the first year; that his re-election vacated and put an end to his first appointment; and that his sureties were not bound for his performance under his new appointment.

The case of *The Liverpool Water Works Company* v. *Atkinson et al.* 6 East, 507, is in point. It was this: The company appointed *Atkinson* to collect their revenues, and he entered into bond with *Harpley* his surety. The condition of the bond recited, that *Atkinson* would well and diligently collect their revenues, &c. from time to time for 12 months; and at all times thereafter, during the continuance of such his employment, &c.; and that he would well and truly account, &c. It was held that the liability of the surety was limited to 12 months.

Lord *Arlington* v. *Merricke*, 2 Saund. Rep. 411, is a similar case. Lord *Arlington* appointed one *Jenkins* his deputy postmaster for six months. The condition of his bond was, that he was appointed for six months; and that he would, during all the time he might continue in such office, faithfully discharge his duties, &c., account, &c. He remained in office for upwards of three years, without any further appointment or bond. It was held that his surety was only liable for the first six months.

The case of *The Wardens of St. Saviours* v. *Bostock et al.* 2 Bos. & Pul. New Rep. 175, was debt upon the bond of a collector of church rates. The condition of the bond recited the appointment, and then stated that he was to collect and account for the then rates, and also all and every other rate and rates thereafter to be made. It was however held, that the sureties were only liable for that single appointment, and not for his appointment in the ensuing year.

The case of *Dance et al.* v. *Girdler et al.* 1 Bos. & Pul. New Rep. 34, was an action on a collector's bond. *A. B. C.* &c.

the governors of the society of musicians, appointed one *Horwood* their collector, and he gave bond and surety to *A. B. C.* &c. payable to them as governors, &c. and to their successors in office; conditioned for *Horwood's* faithful discharge of duties, &c. Afterwards the society was incorporated by letters patent, and *Horwood* continued to collect, &c. after the society was incorporated; and it was held that the surety was not liable for the acts of the collector, after the society became incorporated.

The case of *Thompson* v. *Young et ux.* 2 Ohio Rep. 334, has some bearing on the question. In 1811, the Bank of *Muskingum* was incorporated, to continue until the first day of *January*, 1818. The company duly organised, and appointed one *Marple* their cashier, who gave bond and surety. There was no limit as to time, either in his appointment or his bond. Before the expiration of the charter of the bank, the legislature extended it from the first of *January*, 1818, to the first of *January*, 1843. The bank was not re-chartered, but the old charter was simply extended. *Marple* continued to act as cashier, after the time that the charter would have expired if it had not been extended, without being re-appointed and without giving a new bond. On suit being brought upon this bond, it was unanimously held, that the sureties were not liable for any defalcations, made by the cashier after the expiration of the time to which the original charter was limited.

Numerous other cases might be noticed of a similar import, but it is not supposed to be necessary, as this is to us a very clear case.

*Per Curiam.*—The judgment as to the plaintiffs in error is reversed. To be certified, &c.

*C. Fletcher* and *D. M'Donald*, for the plaintiffs.
*W. Herod*, for the defendant.