**304**     CASES IN THE SUPREME COURT

State use Higginbotham's ad. vs. Watts et al.     [JANUARY

---

STATE USE HIGGINBOTHAM'S AD. VS. WATTS ET AL.

It is a rule, in the construction of statutes, that an existing statute shall not be repealed by a subsequent enactment, unless the repeal be expressed in words of revocation, or unless there is such a manifest repugnance between the statutes that

both cannot be in force: and also, that all statutes upon the same subject matter shall be so construed that all shall continue in force, if that construction is possible.

There is no such repugnance between the *7th section, of chapter* 120, *Rev. Stat.,* [*sec.* 8, *ch.* 6, *Gould's Dig.*] and the act of 18th December, 1840, subsequently passed, as to require the court to hold, under the principles governing the construction of statutes, that the former was repealed by the latter.

The court conclude, with much hesitation that, notwithstanding the execution of a special administration bond in each estate taken by the public administrator, the "sheriff and his securities shall be responsible on his official bond, for misconduct in discharging his duties as public administrator."

The office of public administrator continues with the person to whom it was committed, unless a regular administrator be appointed, and the responsibility of the securities in the bond existing when the possession of the estate was taken, continues until the public administrator shall be discharged, whether he be re-elected and give a new bond, or another person be elected sheriff.

The authority of the Probate Court to make an order requiring the sheriff to take charge of the estate of a deceased person, is not to be questioned: nor need such order state the reason that moved the court to make it.

If the breach in a declaration upon the official bond of the sheriff, as public administrator, charge that he did not deliver bonds, choses in action and assets, belonging to the estate, and in his hand, to his successor, it is sufficient—such successor is not an administrator de bonis non.

*Appeal from Dallas Circuit Court.*

Hon. JOHN C. MURRAY, Circuit Judge.

HUTCHINSON for appellant.

GALLAGHER, for appellee.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

At the January term, 1852, of the Probate Court of Dallas county, Hillory M. Bouldin, sheriff of the county, was ordered by the court to take possession of the goods and effects of Sanford Higginbotham, dec'd, and as public administrator to administer the estate with the will annexed. In accordance therewith Bouldin proceeded with the administration of the estate, which amounted, according to the averment of the declaration,

20

to nearly sixteen thousand dollars, until at the January term, 1855, his authority to act was annulled by the Probate Court. At the same time Bouldin was found to be in arrear to the estate in a sum which he was ordered to pay to his successor in the administration, and for his failure to comply with the order, this suit was brought against two of his securities upon the official bond that was in force when, under the direction of the court, he began the administration of the estate. This bond was given in October, 1850, and was a common sheriff's official bond to secure the performance of the duties of the office by Bouldin for two years, or for the term of office as prescribed by law.

On the 15th of January, 1852, Bouldin executed a bond for the faithful performance of the administration of the estate, according to the will annexed of the deceased, and according to law, which bond was given under the *3d section, of chap. 6, of English's Digest*, and the third plea of the defendants raises the question, that the acceptance of this bond by the court superseded all subsequent recourse upon the bond sued on, the ordinary bond given by Bouldin, for the proper exercise of his duties as sheriff of Dallas county.

The arguments upon both sides of the question strongly commend themselves to our consideration. The point is an important one, and can be decided only upon view of the course of legislation upon the subject, and of the legal inferences that should be drawn from the legislation.

By the first code of our state law it was enacted as follows:

"SEC. 7. Every sheriff and his securities, shall be responsible, "on his official bond, for misconduct in discharging his duties of "public administrator."

"SEC. 8. When any estate shall amount to three thousand dol-"lars and upwards, the Probate Court shall require the public "administrator to give security as in other cases of administra-"tion. *Rev. Stat. 649.*"

The law stood thus only till the next session of the General Assembly, when the act of 18th December, 1840, repealed the

eigthth section above quoted, and enacted that when any property should come into the hands of a public administrator, he should enter into such bond and security as should by the existing law be required in ordinary administrations. *Acts of 3d session*, 39. From this repealing act it is to be noticed that the attention of the General Assembly was specially directed to *ch.* 120, *of the Rev. Statutes*, that the 8th section was repealed by express enactment, that the 7th section was not mentioned, and was thus left in full force unless it was repealed by implication.

It is a cardinal principal of statutory construction that an existing statute shall not be repealed by a subsequent enactment, unless the repeal be expressed in words of revocation, or unless there is such a manifest repugnance between the statutes that both cannot be in force. *Sedgwick on Statutory and Constitutional Law*, 121, 123, 126; *Smith's Comm. S.* 760; *Hamilton vs. Buxton*, 1 *Eng.* 27.

To make a shapely system out of the two sections of the Revised Statutes, it would seem fair to infer the intention of the legislature to have been that the public administration of estates less in value than three thousand dollars, should be secured by the official bond of the sheriff, while the particular bond required in all other cases should be the security for the administration of the estate in which it was given. Whence it would also follow, since the act of 1840, that the public administration of every estate would be secured by its individual bond. This would conform to the rule of construction that discourages the liability of a security to be extended beyond its terms.

And an additional reason for this construction is afforded by the causes and occasions of each of the two bonds of Bouldin under consideration; one relating to his election to the office of sheriff, and providing for the performance of its common ministerial duties, being only for ten thousand dollars, less, than the assets of the estate of Higginbotham, and covering many matters, all of which are entirely distinct from the administra-

tion of an estate; while the other bond was given because Bouldin had been directed by the Probate Court to take control of an estate to save it from being wasted or purloined, is confined solely to the protection of the estate, is for a sum with securities deemed sufficient by the Probate Court, under whose direction it was taken and by whose judgment it was approved.

If it was a question of feeling or of fitness, courts, with individuals, might sympathise with the defence which would restrict the liabilities of the securities of the first bond to its literal fulfillment. Or, if this were a proceeding in equity, the case might be considered, as between the two bonds, whether the second bond should be enforced with this, or whether it should not constitute the primary fund for the satisfaction of the present cause of action. But in this suit we can only pronounce upon the legal liability of the defendants as securities to the official bond of Bouldin; and with the view we take of our statutes, we cannot sustain the third plea without holding that the act of 1840 was an implied repeal of the 7th section above quoted, which is included in English's and Gould's Digests as *sec.* 8, *of chap.* 6, of both books, each continuing as part of the law of the state. This we cannot hold, as the law seems to us to be well settled against favoring a repeal of a statute by implication, nor could we do so independent of this principle, for the act of 1840 is no more a repeal of the 7th section mentioned, than the section immediately following was an abrogation of it as to all estates that amount to three thousand dollars; One construction would follow the other, which would oppose another sound rule of construction, that all statutes upon the same subject matter shall be so construed as that all shall continue in force if that construction be possible. *Sedgwick, ub. supra* 247 ; *Smith's Com. s. s.* 644, 647, 757 ; *Kelly vs. McGuire,* 15 *Ark.* 583 ; *Wilson vs. Biscoe,* 6 *Eng.* 47 ; *McFarland vs. The State Bank,* 4 *Ark.* 416.

When several remedies are provided, they are to accumulate and exist together, not destroy each other.

We therefore conclude, but with much hesitation, that, not-

withstanding the execution of a special administration bond in each estate taken by the public administrator, the "sheriff and his securities shall be responsible on his official bond, for misconduct in discharging his duties of public administrator."

The securities must be taken to have acted with a view of their responsibilities as imposed by the letter of this law, as well as by the conditions written in the bond, and if entitled to commiseration for a more extensive responsibility than they imagined, they, perhaps, can have it in circles prone to the exercise of sympathy, but that is not to be expected in a court of law.

We fully realize the hardship of the condition of the defendants, as compared with the concurrent or primary liability of the makers of the public administration bond, but whatever relief awaits them, must be sought in another tribunal.

As the replication to the second plea is undoubtedly bad, we shall consider it and the demurrer to it as simply a demurrer to the plea.

The plea is, that in the election of August, 1852, Bouldin was elected sheriff; that in October, 1852, he gave a new bond, and it thence infers that the second official bond released the parties to the first bond from any responsibility for the acts of Bouldin as public administrator, after the execution of the second bond.

To relieve the case from complication, let the instance be put of another person than Bouldin, having been the successor of his first term of office; would the sheriff that was a stranger to Bouldin's administration be accountable for anything done in the administration? The question carries with it its own answer, but it also refutes the conclusion of the plea. If Bouldin's second official bond should take the place of the first, it would be because his administration was attached to his second term of office, and the same result would have happened if any other person than Bouldin had been elected sheriff in 1852. We do not think that a public administration once begun, is an appendage to the sheriff's office, but that the sheriff who under-

takes the administration may complete it, unless letters testamentary, or of administration be regularly granted upon the estate. This provision for the close of the public administration seems to exclude the idea of its transfer with the office of sheriff, and we hold that Bouldin continued to be the public administrator of Higginbotham's estate till he was removed, in October, 1855, after his second sheriff's term had expired, and that his first official bond remained as a security for his administration till four years from his misconduct as public administrator, and that the misconduct for which the defendants were responsible, was his noncompliance with the order of the probate court, made at its October term, 1855, directing him to pay the balance found against him to his successor in the administration.

The same positions, both as to the continuance of the office of public administrator with the person to whom, as sheriff, it was committed, and as to the responsibility of the bond existing when the possession of the estate was taken, are fully sustained by cases that have arisen upon a similar statute in Virginia. *Dabney vs. Smith,* 5 *Leigh* 19; *Douglass vs. Stump, ib.* 395, 398; *Tyler vs. Nelson,* 14 *Gratt.* 221.

These cases liken the condition of the public administrator to that of a sheriff, whose term of office has expired, but who completes his unfinished business, and for whose proper discharge his securities are responsible. This rule of practice has become statute law of this state. *Sec.* 65, *ch.* 67, *Eng. Dig.*

And in Kentucky, where the statute, in certain cases, authorized the county court to commit an estate to the possession of the sheriff, who disposed of it under the direction of the court, and as its agent only, as held by the courts, although no provision was contained in the statute that his bond should protect the estate, the Court of Appeals held that it could not be intended that the sheriff was to have charge of the estate without security, and that as no other was provided, his official bond was his security, on which his sureties would be liable with him as far as he was officially responsible. *Williams vs. Collins,* 1 *B. M.* 60.

And in the late condensation of the statute law of Kentucky, the revision extends the law to make it conform to the exposition of the Virginia statute, as given in the decisions we have cited. *Ky. Rev. Stat. of* 1852, 333, *s.* 18.

In Alabama, a sheriff's administration by statute is attached to the office. *Governor vs. Gantt,* 1 *Stew.* 390. Hence its decisions might not accord with those of Virginia.

We have examined the cases to which we have been referred by the appellees, that fix the liability of sheriffs, administrators and guardians between different bonds, and other decisions to which the cited cases referred. These cases are relied on by the appellees to sustain their second plea, but we cannot see that they do, or that they clash with the Virginia cases, and with our construction of our statute. The principle pervading them is, that the liability should rest upon the bonds in force when the default of the principal is committed, and that is the principle upon which we hold the first official bond of Bouldin to cover the whole term of his public administration. *Phillips vs. Brazeal,* 14, *Ala.* 746; *Dumas vs. Patterson,* 9 *Ala.* 484; *Governor vs. Robbins,* 7 *Ala.* 79; *Sherrill vs. Goodrum,* 3 *Hump.* 419; *The People vs. Ten Eyck,* 13 *Wend.* 448, and *Sebastian vs. Bryan,* 21 *Ark.* 447, are examples of this class of cases. We do not see how they can assist the second plea, for no default of Bouldin, as public administrator, occurred during his second term of the sheriff's office.

Another class of cases represented by *The Commonwealth vs. Fairfax,* 4 *Hen. & Mun.* 208; *Raney vs. The Governor,* 4 *Black.* 2; *and Thomas vs. Summey,* 1 *Jones Law R.* 554, refuse to extend the liability of sureties beyond the term of the principal's office ; and we should have followed those cases if we had considered Bouldin's term of office had expired till October, 1855, or before his default alleged in the declaration was committed. The authority of these cases is not applicable to any of the pleas of the appellees, but were doubtless cited to show the fault of the

replication to the second plea, which, on inspection, we hold to be bad.

For the reasons herein given, we think the court erred in sustaining the demurrer to the replication to the second plea, because, although the replication was bad, the court should have extended the demurrer back to the plea and quashed it; and that the court erred in overruling the demurrer to the third plea.

No other questions than those arising upon the two pleas disposed of are made by the appellants, but as the case is to go back upon its reversal, some minor points made by the appellees may be noticed to prevent future embarrassment.

No question arises upon the record on which the argument concerning the plea of limitation is properly founded, but an incidental remark in this opinion has disposed of that point.

The authority of the probate court to make the order requiring the sheriff to take charge of the estate of Higginbotham is not to be questioned. It is a court of superior and exclusive jurisdiction over the subject of administration, and its acts are presumed to be lawful. It was not necessary for the direction to Bouldin to state the reason that moved the court to make the order. *State vs. Stroope*, 22 *Ark.*

The first and last breaches assigned in the declaration charge that Bouldin did not deliver bonds, choses in action, and assets belonging to the estate of Higginbotham, etc., in his hand, to his successor in office, as he was ordered to do by the probate court. The objection, therefore, that an administrator *de bonis non* cannot sue his predecessor except for what remains in his hands unadministered, does not destroy the declaration, and the objection is not applicable against the successor of a public administrator, for he is not an administrator *de bonis non*, and the law requires the public administrator to pay to his successor the money, as well as to deliver the property belonging to the estate. *Sec.* 5, *ch.* 6, *Eng. Dig.*

Other defects are alleged against the declaration, but need not be noticed after the appellees have pleaded to it, and espe-

cially after the trial of the case, and when it is here only for consideraton of the points suggested by the unsuccessful party in the court below.

The judgment is reversed.