CHARLES R. HILL v. VILLAGE OF AURORA AND OTHERS.[1]

January 4, 1924.

No. 23,838.

**Issue of village bonds to fund floating indebtedness.**
   1. Chapter 123, Laws 1905, superseded the provisions of chapter 10, R. L. 1905, insofar as they relate to the steps to be taken to issue village bonds to fund floating indebtedness.

**Act of 1905 not repealed by implication by 1921 statute.**
   2. Chapter 209, Laws 1921, was in effect a re-enactment of sections 1854, 1855, G. S. 1913, and did not repeal by implication sections 1932, 1933, G. S. 1913.

Action in the district court for St. Louis county to enjoin defendant village and its officers from issuing and selling funding bonds of said village. Defendants' demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action was overruled, Fesler, J., and the trial court certified that the question presented by the demurrer was important and doubtful.

[1]Reported in 196 N. W. 465.

From the order overruling the demurrer, defendants appealed. Affirmed.

*L. W. Wilson* and *George H. Spear*, for appellants.

*J. C. McGilvery*, for respondent.

*Washburn, Bailey & Mitchell*, filed a brief by permission in support of affirmance.

LEES, C.

Appeal from an order overruling a demurrer to the complaint in a taxpayer's suit to enjoin defendants from issuing and selling funding bonds of the village of Aurora. The order is accompanied by the certificate necessary to permit an appeal and by a memorandum in which the views of the court were tersely stated. It was held that, under the statutes now in effect, a village cannot issue bonds to fund its floating indebtedness without obtaining authority from the legal voters. Appellant contends that this is not a correct construction of the statutes, thereby presenting the only question to be determined on this appeal.

The problem to be solved involves a construction of chapter 10, R. L. 1905; chapter 123, p. 155, Laws 1905, and chapter 209, p. 259, Laws 1921. Chapter 123, p. 155, Laws 1905, appears in G. S. 1913, as sections 1932 and 1933. It was amended by chapter 169, p. 255, Laws 1915 and by chapter 336, p. 472, Laws 1917. As it now stands, bonds may not be issued to fund the floating indebtedness of a village if the proposed issue, when added to bonds already issued and outstanding, will exceed 15 per cent of the assessed value of all the taxable property in the village exclusive of money and credits, and no bonds can be issued without obtaining the approval of the legal voters. Chapter 10, R. L. 1905, contains the last mentioned requirement, but it is not applicable to bonds issued for refunding purposes. Those purposes are designated as follows: (1) To pay a judgment; (2) to refund outstanding bonds and (3) to refund floating indebtedness. Section 783, R. L. 1905, appears in G. S. 1913 as section 1854, and section 784 as section 1855. Section 1854 was amended by chapter 209, p. 259, Laws 1921, as follows: The words "funding or" were inserted before the words "refunding pur-

poses" where they appear in the proviso found in that section. This is a more appropriate term to describe the process of converting floating into bonded indebtedness, but it does not give a new meaning to the statute. Subdivision 5 of section 1855 was amended by inserting the words "for funding" before the words "floating indebtedness," by the addition of a proviso reading as follows:

"Provided, however, that bonds hereafter issued for the purpose of funding floating indebtedness under authority of this act shall be payable in annual installments, as nearly equal in amount as conveniently may be, the first of which installments shall be due in not more than three years from the date of the issue, and the last of which installments shall be due in not more than fifteen years from the date of the issue,"

and by providing that the powers conferred on school districts by chapter 272, p. 407, Laws 1905, should not be affected. Chapter 123, p. 155, Laws 1905, took effect April 7, 1905. The revised laws did not take effect until March 1, 1906. Between these dates villages funding their floating indebtedness must have proceeded under chapter 123.

Counsel for appellants contend that after the revised laws took effect their provisions govern in such a case as this if the bonds will not exceed the debt limitation specified in section 1851, G. S. 1913. They concede that if the limitation would be exceeded, the provisions of sections 1932, 1933, G. S. 1913, would govern. They take the position that the two statutes are independent. Respondent's counsel meet the point by calling attention to section 5504, R. L. 1905, now section 9398, G. S. 1913, reading in part as follows:

"They [the Revised Laws] shall take effect March 1, 1906, but shall not be construed as abrogating any act passed at the session of 1905, all of which, so far as they differ from the Revised Laws, shall be construed as amendatory thereof or supplementary thereto."

Section 5504 was referred to in Spear v. Noonan, 131 Minn. 332, 155 N. W. 107, and in State v. Board of Education, 139 Minn. 94, 165 N. W. 880, and the general purpose and effect of the revision were stated in State v. Erickson, 125 Minn. 238, 146 N. W. 364.

It is contended that section 5504 compels the conclusion that chapter 123, p. 155, Laws 1905 (sections 1932, 1933, G. S. 1913), amended the provisions of the revised laws contained in sections 1854, 1855, G. S. 1913. The opposing contention is that it merely supplemented the provisions of the revised laws relating to the same subject matter.

A comparison of the two statutes discloses a number of differences in their provisions. Under chapter 123, bond issues were limited to 15 per cent of the assessed valuation of the real estate in the village. Village councils were permitted to determine whether interest should be payable annually or semi-annually. The bonds must mature within 15 years. The council was required to adopt a resolution determining the amount of the issue, the rate of interest and the time of maturity, and to obtain the approval of the resolution by the legal voters at the annual village election or at a special election called for the purpose of voting on the question of issuing bonds, and the bonds could not be sold for less than their par value. Under the revised laws, bond issues are limited to 10 per cent of the assessed valuation of all the taxable property in the village. Interest must be paid half-yearly. The bonds must mature within 20 years. The governing body must have first resolved that it was expedient to borrow money for one or more authorized purposes and, with the exceptions mentioned in section 1854, G. S. 1913, the proposal must have been submitted to the voters at a general or special election called for the purpose of voting on the question of issuing the bonds, and the bonds cannot be disposed of for less than their face value with accrued interest. Notwithstanding these differences, appellants' counsel earnestly contend that the two enactments are independent and that neither is modified by the other. With one exception (chapter 230, p. 589, Laws 1895), it seems to have been the uniform policy of the legislature, prior to 1905, to require the approval of the legal voters as a condition precedent to the issuance of bonds to pay the floating indebtedness of a village. If there was a departure from the policy, it came with the adoption of the revision of the statutes.

Chapter 123, p. 155, Laws 1905, is not in express terms repugnant to sections 783 and 784 of the revised laws, but it occupies the same legislative field, relates to the same subject matter and is a complete workable law designating all the steps to be taken when a village council decides to issue bonds to fund floating indebtedness. It must be viewed as legislation subsequent to the revision superseding the provisions of chapter 10 insofar as they have applicability to village bonds issued to fund floating indebtedness. Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375; Farm v. Royal Neighbors, 145 Minn. 193, 197, 176 N. W. 489.

It is apparent that the revisers aimed to codify the law on the subject of public indebtedness. The code they framed has met with the fate of most attempts to condense and simplify our statutory law. In its original form chapter 10 occupied three pages of the published volume of the revised laws. So many additions have since been made that, in the 1913 compilation, chapter 10 occupies 29 pages. Its original provisions have not been abrogated, but they have been so changed that they are now far from a complete independent legislative enactment not limited by other acts dealing with the same subject.

This brings us to a consideration of the effect of chapter 209, p. 259, Laws 1921. It contains no repealing clause. The learned trial judge was of the opinion that it was in the nature of a re-enactment of sections 1854 and 1855, G. S. 1913, that it did not repeal sections 1932, 1933, G. S. 1913, and that there should be an application of the rule that a later law, which is merely a re-enactment of a former, does not repeal an intermediate act which qualifies or limits the first one, the intermediate act being deemed to remain in force and to qualify or modify the new act in the same manner as it did the first. The rule was first stated in Gaston v. Merriam, 33 Minn. 271, 283, 22 N. W. 614, and was applied in Powell v. King, 78 Minn. 83, 80 N. W. 850, and in Nelson v. County of Itasca, 131 Minn. 478, 155 N. W. 752. In Gaston v. Merriam, it was held that, if the intermediate act modified a provision of the first act, it would continue in force and modify the same provision when subsequently re-enacted, unless the later act was plainly intended as a substitute for the

first, furnishing the only rules on the subject it covered, or unless the provisions of the two acts were so irreconcilable that they could not stand together. Considering the subject dealt with and the phraseology of chapter 209, it seems clear that all the legislature intended to do was to re-enact sections 1854 and 1855 with two slight changes in their phraseology and with the addition of the proviso already mentioned.

The attorney general's biennial report to the Governor, submitted December 31, 1922, at page 65, sets out an opinion to the effect that the act did not work a repeal of sections 1932 and 1933. We think this is the correct view and hold that the village could not lawfully issue the bonds in question without obtaining the approval of the electors in the manner prescribed by sections 1932, 1933, G. S. 1913.

The order overruling the demurrer is affirmed.