LYBRAND *v*. WAFFORD (1).

PIONEER CONSTRUCTION COMPANY *v*. MADISON COUNTY (2)

Opinion delivered June 6, 1927.

1. CONSTITUTIONAL LAW—EFFECT OF ADOPTING AMENDMENT.—The constitutional amendment adopted October 5, 1926 (Acts 1927, p. 1210), prohibiting the issuance of bonds by cities or counties, except to pay indebtedness existing at the time of the adoption of the Constitution of 1874, *held* not to repeal the bond-issuing clause of the constitutional amendment adopted October 7, 1924 (Acts 1925, p. 1086), authorizing bonds to pay indebtedness of counties and cities and towns outstanding at adoption of such amendment.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTIONS.—A constitution as a whole is to be examined with a view to arriving at the true intention of each part; and if any section bè intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections and finding the sense of one clause by the words or obvious intent of another, so that effect`may be given, if possible, to the whole instrument.

3. CONSTITUTIONAL LAW—CONSTRUCTION IN LIGHT OF CONDITIONS.— Constitutions, like statutes, are properly to be construed in the light of conditions existing at the time of adoption and the general spirit of the times and the prevailing sentiments among people.

4. CONSTITUTIONAL LAW—EFFECT OF LATEST AMENDMENT.—In construing a constitution and amendment thereto, the last amend-

ment adopted must control and all the provisions of the constitution and the prior amendments thereto which are in necessary and irreconcilable conflict must yield.

5.  CONSTITUTIONAL LAW—REPEAL BY IMPLICATION.—Repeal by implication of a provision of a constitution is not looked on with favor, and is never allowed except where there is such invincible repugnancy between the former and latter provisions that both cannot stand together.

6.  CONSTITUTIONAL LAW—UNINTELLIGIBLE WORDS.—Where a word or phrase in a constitution would make the clause in which it occurs unintelligible, the word or phrase may be eliminated and the clause read without it.

7.  CONSTITUTIONAL LAW—REENACTMENT OF PROVISION OF CONSTITUTION.—A later constitutional amendment, which is merely a reenactment of a provision of the constitution, does not repeal an intermediate amendment which qualifies or limits the original constitution, but such intermediate amendment will be deemed to remain in force and to qualify or modify the new amendment in the same manner as it did the original constitution.

8.  CONSTITUTIONAL LAW—PROVISIONS RELATING TO DEBTS OF MUNICIPAL CORPORATIONS.—The provisions of the Constitution of 1874 and all amendments thereto relating to debts of municipal corporations must be considered *in pari materia* as constituting the whole body of law on that subject.  ·  .

9.  CONSTITUTIONAL LAW—EFFECT OF REENACTMENT OF CONSTITUTIONAL PROVISION.—So far as a section of the Constitution is changed by amendment, it receives new operation, but, so far as it is not changed, mere nominal reenactment should not disturb the whole body of statutes *in pari materia* passed since the first enactment.

10. CONSTITUTIONAL LAW—EFFECT OF SECOND AMENDMENT.—Where a provision of the Constitution is amended, an intermediate amendment, inconsistent with the new matter made by the second amendment, will be repealed.

11. MANDAMUS—ISSUANCE OF BONDS TO PAY COUNTY INDEBTEDNESS.—The county cannot be compelled by mandamus to issue interest-bearing certificates or bonds to pay indebtedness existing at the time of adoption of Constitutional Amendment No. 11, adopted October 7, 1924 (Acts 1925, p. 1086), which provided that counties may issue such certificates for existing indebtedness, since it is only where the statute imposes positive, instead of discretionary, power that the wood "may" will be construed as obligatory.

(1) Appeal from Grant Circuit Court; *Thomas E. Toler,* Judge; reversed.

*John L. McClellan* and *T. Nathan Nall,* for appellant.
*W. L. Baugh, Jr.,* for appellee.

(2) Appeal from Madison Circuit Court; *J. S. Maples,* Judge; affirmed.

*Duty & Duty,* for appellant.
*Carl V. Stewart,* for appellee.
*Mehaffy & Miller, amici curiae.*
*Reed, Daugherty, Hoyt & Washburn* and *Robinson, House & Moses, amici curiae:*

WOOD, J. 1. By these appeals we are asked to answer the following question: Did the constitutional amendment adopted October 5, 1926, as Amendment No. 15, repeal the bond-issuing clause of the constitutional amendment adopted October 7, 1924, as Amendment No. 11? (These constitutional amendments will hereafter for convenience be referred to as Amendments No. 11 and No. 15, respectively, regardless of the numbers that may be given them when they are digested in the Constitution).

Amendment No. 11 is, in part, as follows:

"Section 1. That § 4 of article 12 of the Constitution of the State of Arkansas be amended by adding thereto the following: 'The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis'."

The language of the first section then prescribes the method by which counties, cities and incorporated towns shall be conducted on a sound financial basis, and the section further contains the following:

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid."

Section 2 repeals all provisions in conflict.

Amendment No. 15 is as follows:

"That § 1 of article 16 of the Constitution of the State of Arkansas be amended to read as follows: 'Article 16, § 1: Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the *indebtedness existing at the time of the adoption of the Constitution of 1874,* and the State shall never issue any interest-bearing treasury warrants or scrip.' Provided, that cities of the first and second class may issue, by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the purpose, bonds in sums and for the purposes approved by such majority at such election as follows:

"For the payment of any indebtedness existing at the time of the adoption of this amendment; for the purchase of rights-of-way for construction of public streets, alleys and boulevards within the corporate limits of such municipality; for the construction of, widening or straightening of streets, alleys and boulevards within the corporate limits of such municipality; for the purchase, development and improvement of public parks and flying-fields located either within or without the corporate limits of such municipality; for the construction of sewers and comfort stations; for the purchase of fire-fighting apparatus and fire-alarm systems; for the purchase of street-cleaning apparatus; for the purchase of sites for, construction of, and equipment of city halls, auditoriums, prisons, libraries, hospitals, public abattoirs, incinerators or garbage disposal plants; for buildings for the housing of fire-fighting apparatus; for the construction of viaducts and bridges; and for the purpose of purchasing, extending, improving, enlarging, building, or construction of waterworks or light plants, and distributing systems therefor. * * * ".

There is no express repeal of any other provision of the Constitution, in Amendment 15.

It will be observed that, under the language of Amendment No. 11, above quoted, counties, cities and incorporated towns, in order to secure funds to pay *indebtedness existing at the time of the adoption of the amendment,* are authorized to issue interest-bearing certificates of indebtedness or bonds, while the language of Amendment No. 15 is: ''Nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness except such bonds as may be authorized by law to provide for and secure the payment of *the indebtedness existing at the time of the adoption of the Constitution of 1874.*'' There being no express provision in the language of Amendment No. 15 repealing the bond-issuing provision of Amendment No. 11, the question therefore is whether or not the language of the bond-issuing provision of Amendment No. 15 repeals the bond-issuing provision of Amendment No. 11 by necessary implication.

In *State* v. *Martin,* 60 Ark. 343, 348, 30 S. W. 421, 422 (28 L. R. A. 153), we said:

''We must keep to the front certain familiar but unvarying rules when we come to interpret the provisions of any section of a constitution. (1). Unambiguous words need no interpretation. (2) Where construction is necessary, words must be given their obvious and natural meaning. (3) The words or provisions under consideration must be construed with reference to every other provision, so as to preserve harmony in the whole instrument. (4) The intent of the framers, gathered from both the letter and spirit of the instrument, is the law.''

Judge Cooley says: ''The object of construction, as applied to a written constitution, is to give effect to the intent of the people adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been

employed with sufficient precision to convey it, and, unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it.''

He further says: ''Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no *absurdity and no contradiction between different parts of the same writing,* then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning.

''Nor is it lightly to be inferred that any portion of a written law is so ambiguous as to require extrinsic aid in its construction. *Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law. It is therefore a very proper rule of construction, that the whole is to be examined with a view to arriving at the true intention of each part.* * * * *If any section of a law be intricate, obscure, or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent* of another. And in making this comparison it is not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law. The rule applicable here is that *effect is to be given, if possible, to the whole instrument,* and to every section and

clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.

"This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another if, by any reasonable construction, the two can be made to stand together. Every provision should be construed, where possible, to give effect to every other provision. Upon the adoption of an amendment to a constitution the amendment becomes a part thereof, as much so as if it had been originally incorporated in the constitution, and it is to be construed accordingly. If possible, it must be harmonized with all the other provisions of the constitution. If this cannot be done, the amendment will prevail." 1 Cooley, page 124, Constitutional Limitations. Numerous cases are cited in note to text.

There is another familiar rule which should be stated here. "It is settled by very high authority that, in placing a construction on a constitution, or any clause or part thereof, a court should look to the history of the times, and examine the state of things existing when the constitution was framed and adopted, in order to ascertain the old law, the mischief and the remedy. Constitutions, like statutes, are properly to be expounded in the light of conditions existing at the time of their adoption and the general spirit of the times and the prevailing senti-

ments among the people." 6 R. C. L. § 46, p. 51. Numerous cases are cited to support the text.

Another rule, about which there is no conflict in the authorities in the construction of a constitution and amendments thereto, is that the last amendment to a constitution adopted by the people must control, and all the provisions of the constitution and the prior amendments thereto which are in necessary and irreconcilable conflict with the last expression of the popular will must yield and the last amendment adopted be allowed to stand.

Still another rule which must be considered is that a repeal by implication of a provision of a constitution, like the repeal of a statute by implication, is not looked upon with favor and is never allowed by the courts, except where there is such an invincible repugnancy between the former and the later provisions that both cannot stand together and be a part of the organic law.

Another rule is that, where a word or phrase in a statute would make the clause in which it occurs unintelligible, the word or phrase may be eliminated and the clause read without it.

Still another rule is that a later law which is merely a reenactment of a former does not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner that it did the first.

The above rules have been announced by text-writers and adjudicated cases, and most of them have often found expression by our own court, according to the particular facts calling for their application. See, in addition to the above text from Cooley and R. C. L. and the authorities there cited, Endlich on the Interpretation of Statutes, §§ 27 and 28; 2 Lewis' Sutherland Statutory Construction, § 284, page 739; Black on Interpretation of Laws, §§ 39, 40; also some of our own cases, as *State v. Scott,* 9 Ark. 270; *State v. Watts,* 23 Ark. 304; *Hawkins*

v. *Filkins,* 24 Ark. 286; *State* v. *Martin, supra; Hartford Fire Ins. Co.* v. *State,* 76 Ark. 303, 89 S. W. 42; *Carpenter* v. *Little Rock,* 101 Ark. 238, 142 S. W. 162; *Martels* v. *Wyss,* 123 Ark. 184, 184 S. W. 845; *Morris* v. *Raymond,* 142 Ark. 450-501, 201 S. W. 116; *Bank of Blytheville* v. *State,* 148 Ark. 504, 230 S. W. 550; *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22; *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649; *Combs* v. *Gray,* 170 Ark. 936, 281 S. W. 918.

The provisions of the Constitution of 1874 and all the amendments thereto relating to the debts of municipal corporations, counties, cities and towns must be considered *in pari materia* as constituting the whole body of the law on that subject. Article 12, § 4, of the original Constitution is as follows

"No municipal corporation shall be authorized to pass any law contrary to the general laws of the State; nor levy any tax on real or personal property to a greater extent, in one year, than five mills on the dollar of the assessed value of the same. Provided that, to pay *indebtedness existing at the time of the adoption of this Constitution,* an additional tax of not more than five mills on the dollar may be levied."

Article 16, § 1, is as follows:

"Neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, (a) except such bonds as may be authorized by law to provide for and secure the payment *of the present existing indebtedness,* and the State shall never issue any interest-bearing Treasury warrants or scrip."

The adoption of Amendment No. 11 added all of its provisions to § 4 of article 12 of the Constitution and repealed the provisions of the Constitution in conflict therewith. By the adoption of Amendment No. 15 the provisions of § 1, article 16, were readopted in the pre-

cise language of that section down to the words, "present existing indebtedness." Instead of these words in § 1, art. 16, of the original Constitution, the words in Amendment No. 15 are "indebtedness existing at the time of the adoption of the Constitution of 1874." After repeating verbatim the language of § 1, article 16, except as above set forth, Amendment No. 15 provides that cities of the first and second class may issue bonds for the various purposes therein specified, the first purpose mentioned being for the payment of any indebtedness existing at the time of the adoption of this amendment. Then follows an enumeration of the various public improvements for which cities of the first and second class may issue bonds.

Now, keeping in mind the applicable rules of construction as above set forth, let us see if there is any irreconcilable conflict between Amendment No. 11 and Amendment No. 15 of the Constitution. The history of the times shows that, when Amendment No. 11 was adopted, many, if not all, the counties, cities and towns of the State were heavily in debt. In order to enable them to pay off their indebtedness existing at the time of the adoption of Amendment No. 11 and thus to get on a cash basis, they were authorized to issue bonds; and, in order to keep them on a cash basis, they were prohibited from incurring any future obligations in any fiscal year which exceeded the revenue for such year. This was the purpose of Amendment No. 11, as declared in *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782; *Babb* v. *El Dorado, supra; Nelson* v. *Walker,* 170 Ark. 170, 279 S. W. 11; also *McGregor* v. *Miller,* 173 Ark. 459, 297 S. W. 30; see also *Independence County* v. *Lester,* 173 Ark. 796, 293 S. W. 743.

What, then, was the intention of the draftsman who formulated the language in which Amendment No. 15 was couched and in which it was initiated, submitted to, and adopted by the people, and what was the intention of the people in adopting the same? Of course, the

people intended to adopt the amendment as it was writ-ten. We are convinced that it was the intention of the draftsman of Amendment No. 15 to copy in the first paragraph thereof all of § 1, article 16, of the Constitu-tion of 1874. Doubtless such intention was in his mind when he copied literally the language of § 1, article 16, of the Constitution down to the words "present existing indebtedness," then, through inadvertence, or mere cleri-cal oversight, instead of using the words "present existing indebtedness," he used the words, "indebtedness existing at the time of the adoption of the Constitution of 1874." This change in the language was wholly immaterial, because, in the sense they were obviously intended to be used, the expression "present existing indebtedness" and the expression "indebtedness exist-ing at the time of the adoption of the Constitution of 1874" mean precisely the same thing; for the "present existing indebtedness" at the time these words were used in § 1, article 16, of the Constitution, was "indebted-ness existing at the time of the adoption of the Constitu-tion of 1874." These were synonymous expressions, and indeed but convertible terms. If the words "indebted-ness existing at the time of the adoption of the Constitu-tion of 1874" should be construed to mean that it was the intention of the people in adopting Amendment No. 15 to prohibit counties, cities, towns or municipalities from issuing any interest-bearing evidences of indebted-ness except *"indebtedness existing at the time of the adoption of the Constitution of 1874,* then the first para-graph of the amendment in which this language is used would be wholly inconsistent with the provisions in the second paragraph, to wit: "that cities of the first and second class may issue" bonds "for the payment of any indebtedness existing at the time of the adoption of this amendment." In the first paragraph the words "city, town or municipality" certainly include cities of the first and second class mentioned in the second paragraph.

It is the duty of the court, under one of the rules of construction above mentioned, to give some meaning, if

possible, to all the words used in Amendment No. 15, and to interpret the separate words as well as the language of the amendment as a whole, so as to make its varied provisions harmonize, if possible, and to arrive at the intention of the electorate in adopting the amendment. As we have said, the phrase, "indebtedness exist- ⌐ ing at the time of the adoption of the Constitution of 1874," was intended to mean precisely the same as if the . phrase were the "present existing indebtedness," it being the manifest intention not to change § 1, article 16, of the Constitution of 1874, except to amend the same by adding thereto the provisions contained in the second paragraph of the amendment.

"It is the duty of the courts," says Mr. Black, "to give effect, if possible, to every word of the written law. But, if a word or clause be found in a statute which appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning, or which is repugnant to the rest of the act and tends to nullify it, and if the statute is complete and sensible without it, such word or clause may be rejected as surplusage." And, on the other hand, as this distinguished author says, "Words may be interpolated in a statute, or silently understood as incorporated in it, where the meaning of the Legislature is plain and unmistakable, and such supplying of words is necessary to carry out that meaning and make the statute sensible and effective." Black on Interpretation of Laws, §§ 39 and 40.

Section 23 of article 5 of the Constitution provides that "no law shall be revived or amended, or the provisions thereof extended, or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred, shall be reenacted and published at length." What we have said above in regard to the rules of construction and interpretation applies equally to constitutions and statutes. See 12 Cor. Jur. 699, and cases cited in note, among them *Hodges* v. *Dowdy,* 104

Ark. 583, 149 S. W. 656; see also *Babb* v. *El Dorado, supra*.

Our conclusion therefore is that the electorate, in adopting Amendment No. 15, intended by the first paragraph thereof to amend § 1, article 16, of the Constitution of 1874 by readopting the same in language meaning precisely the same thing as § 1, article 16, and then intended to add thereto the provisions contained in the second paragraph. Since therefore the first paragraph of Amendment No. 15 merely adopts the constitutional form of amending § 1, article 16, of the Constitution by reenacting or adopting that section, and then adding thereto the changes contained in the proviso of the second paragraph, we must apply to the first paragraph of Amendment No. 15 the well-established canon of construction referred to above and expressed by Mr. Sutherland as follows:

"The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. *So far as the section is changed it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the mere nominal reenactment should have the effect of disturbing the whole body of statutes in pari materia which had been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized.*" 1 Lewis' Sutherland Statutory Construction, vol. 1, § 237, page 441; see also 36 Cyc. 1084.

Under this rule of construction the words, "indebtedness existing at the time of the adoption of the Constitution of 1874" cannot be held to repeal Amendment No. 11, permitting counties, cities and incorporated towns to issue interest-bearing certificates of indebtedness or bonds to pay their indebtedness outstanding at the time of the adoption of Amendment No. 11. Section 1, art.

16, of the Constitution is the original law on the subject of allowing counties, cities and towns to pay their indebtedness. Amendment No. 11 is an intermediate law on that subject, qualifying the original; and the first paragraph of Amendment No. 15 is merely a reenactment of § 1, article 16, of the Constitution, and the first original law on that subject.

In *Ellsworth Dist.* v. *Tyler County Court*, 87 S. E. 870, 77 W. Va. 523, it is held:

"Generally, where a later law is merely a reenactment of the former, it will not be regarded as repealing the intermediate act, which qualified and limited it, but the intermediate act will be deemed to remain in force, qualifying or modifying the new act as it did the first."

In *Gordon* v. *People*, 7 N. W. 69, 44 Mich. 485, Judge Campbell, speaking for a unanimous court, of which Judge Cooley at the time was a member, says:

"The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of any such amendments. So far as the section is changed it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the merely nominal reenactment should have the effect of disturbing the whole body of statutes *in pari materia* which had been passed since its first enactment."

This rule has been announced and applied in many adjudicated cases. *State ex rel.* v. *Clausen*, 199 Pac. 752, 116 Wash. 432; *Monocal* v. *Heise*, 94 N. E. 232, 49 Ind. App. 302; *State ex rel. Taggart* v. *Kansas City*, 111 Pac. 493, 83 Kans. 431; *Hall* v. *Dunn*, 97 Pac. 811, 25 L. R. A. (N. S.) 193, 52 Ore. 475; *Powell* v. *King*, 80 N. W. 850, 78 Minn. 83; *Collins Coal Co.* v. *Hadley*, 38 Ind. App. 637, 75 N. E. 832; *Cooperative Savings & Loan Assn.* v. *Fawick*, 11 S. D. 589, 79 N. W. 847; *Hill* v. *Village of Aurora*, 196 N. W. 465, 156 Minn. 469; *Powell* v. *King*, 80 N. W. 850, 78 Minn. 83, 271; *Nelson* v. *Itasca County*, 155 N. W. 752, 131 Minn. 478; *Gaston* v. *Merriam*, 22 N. W.

614, 33 Minn. 271; *Gaughn* v. *State,* 118 N. E. 565, 187 Ind. 334; *Leach* v. *Exchange State Bank,* 203 N. W. 31, 200 Iowa 185; *Hill* v. *Village of Aurora,* 196 N. W. 465, 157 Minn. 469; *Bentley* v. *Allen,* 66 N. W. 505, 92 Wis. 386; *Olson* v. *Haritwen,* 57 Fed. (C. C. A.) 845; *Small* v. *Lutz,* 67 Pac. 421, 41 Ore. 570, 69 P. 825.

To be sure, the last rule of construction above mentioned is subject to the exception or limitation as stated by Mr. Sutherland on Statutory Construction, § 273, page 524, as follows:

"Where a law is amended and reenacted as amended, any intermediate law inconsistent with the new matter introduced or change made by the amendment will be repealed."

See also *Leach* v. *Exchange State Bank, supra,* page 35.

Now, when the provisions of article 4, § 12, of the Constitution as amended by Amendment No. 11, and § 1, article 16, as amended by Amendment No. 15, are considered and construed in the light of all the above rules, we are thoroughly convinced that there is no inconsistency between the bond-issuing provisions of Amendment No. 11 and Amendment No. 15. On the contrary, the provisions of our Constitution with the amendments thereto on this subject, Nos. 11 and 15, constitute a consistent and harmonious whole. It seems to us that this is the inevitable conclusion, in view of the contemporaneous history of the adoption of these amendments. Many of the counties, cities and towns of the State, as already stated, were overwhelmed with debts, the payment of which and the putting of these municipalities on a cash basis and keeping them so, furnished the motive for the adoption of Amendment No. 11; then, to enable cities of the first and second class to pay their existing indebtedness and to make the municipal improvements mentioned therein necessary to their progress and prosperity, furnished the motive for the adoption of Amendment No. 15. Such, undoubtedly, was the inten-

tion of the people in the adoption of these amendments to the Constitution. But, if the phrase "indebtedness existing at the time of the adoption of the Constitution of 1874," could be construed to mean that it was the purpose of this amendment to prohibit the payment of indebtedness of counties, cities and towns, except that existing at the time of the adoption of the Constitution of 1874, then such construction would strike down Amendment No. 11 and destroy the purpose of the people in adopting that amendment. Such an interpretation of the phrase mentioned would render the same meaningless, lead to an absurdity, and be wholly at variance with the intention of the electorate in adopting these amendments, which intention, if it can be discovered, is the law. We believe we have discovered that intention, assisted as we have been by the excellent briefs of counsel. We therefore answer the question propounded in the beginning of the opinion in the negative by holding that Amendment No. 15 does not repeal Amendment No. 11 and that both must be retained as a part of the organic law of our State.

2. The above conclusion makes it necessary to determine whether or not counties, cities and incorporated towns may be compelled by mandamus to issue interest-bearing certificates or bonds to pay their indebtedness existing at the time of the adoption of the amendment.

An enabling act to put the provisions of Amendment No. 11 into effect was passed by the General Assembly of the State of Arkansas approved March 23, 1925. In *United States ex rel. Stayton* v. *Paschal,* 9 Fed. Rep., 2d Series, page 109, Judge Trieber, in an opinion handed down on December 2, 1925, said: "So the only question to be determined is, does Amendment No. 11 to the Constitution of the State and the enabling act of March 23, 1925, entitle the relator to have interest-bearing bonds issued and paid by the county in order to satisfy his judgment?" The court denied the petition

for mandamus in that case, and, after an exhaustive review of the authorities, among other things said: "It is only when the statute imposes a positive instead of a discretionary power that 'may' will be construed as 'must'." The court then cited and quoted from *Farmers' Bank* v. *Federal Reserve Bank,* 262 U. S. 662, 43 S. Ct., 651, 67 L. ed. 1157, 30 A. L. R. 635, as follows: "It is true that in statutes the word 'may' is sometimes construed as 'shall.' But that is where the context or the subject-matter compels such construction."

We consider the reasoning of Judge Trieber in that case as absolutely unanswerable. He cites to sustain the propositions of law announced and the conclusion reached by him numerous authorities, and his exhaustive and able review of the same makes it unnecessary for us to say more than that we follow this opinion as being a correct interpretation of Amendment No. 11 and the enabling act to make the same effective.

It follows that the judgment of the Grant Circuit Court in the case of *J. W. Lybrand, Jr., County Judge of Grant County,* v. *W. F. Wafford,* is reversed, and the cause will be remanded, with directions to the circuit court to enter a judgment affirming the order and judgment of the Grant County Court in the matter of funding the indebtedness of Grant County existing at the time of the adoption of Amendment No. 11, and to certify its judgment to the county court. It likewise follows that the judgment of the Madison Circuit Court dismissing the petition of the appellant, Pioneer Construction Company, for a writ of mandamus to compel the county judge of Madison County to issue bonds to pay the judgment of the petitioner against that county, is correct. The judgment in that case is therefore affirmed.