ANDORA S. GASTON *vs.* WILLIAM R. MERRIAM and others.

March 11, 1885.

| 33 | 271 |
|----|-----|
| 40 | 136 |
| 33 | 271 |
| 46 | 52 |
| 33 | 271 |
| 62 | 233 |
| 33 | 271 |
| 78 | 84 |
| 33 | 271 |
| 86 | 23 |

**Evidence—Lost Deed—Parol Evidence to Show Error in Record.—** Where a deed of conveyance has been incorrectly recorded and the original has been lost, it is competent to prove, by parol or other competent evidence, the contents of the lost instrument, and that it was incorrectly recorded.

**Same—Description in "Reception Book."—**Where, in such a case, it is claimed that the description of the premises contained in the deed was incorrectly transcribed in the full record, it is competent to introduce in evidence the description contained in the entry made by the register of deeds in the reception book as required by statute; also, in connection therewith, to show that the grantor owned the property described in the reception book, but had no title to that described in the full record.

**Same—Proof of no Title by Record.—**The fact that no title in a party appears of record is competent evidence to prove that he has no title in fact.

**Notice—Unrecorded Deeds Executed prior to 1858—Rights of Judgment Creditors—Statutes held not Retroactive.—**Prior to 1858 all

conveyances of real estate were valid without record as against all persons except subsequent purchasers in good faith. A judgment creditor was not a purchaser within the meaning of the statute. Laws 1858, c. 52, § 1, as amended and re-enacted in 1866, (Gen. St. 1866, c. 40, § 21,) is not retroactive, and, in so far as it provides that every conveyance not recorded shall be void as against attachment and judgment creditors, does not apply to conveyances executed prior to the passage of the act of 1858.

**Tax Sale — Notice to Redeem — Repeal of Law Requiring Notice.—** Laws 1877, c. 6, § 37, requiring holders of certificates of sale for taxes to cause notice to be given before the expiration of the redemption period to the person in whose name the property was assessed, was not repealed by implication by the general tax law of 1878, (Laws 1878, c. 1,) but remained in force until expressly repealed by Laws 1881, c. 10, § 22.

**Statutes—Repeal by Implication.—**Certain rules of construction as to repeals by implication laid down and applied.

**Tax Sale—Notice to Redeem.—**Section 37, referred to, being in force in 1878 and 1879, applies to sales made in those years; following *Merrill* v. *Dearing*, 32 Minn. 479.

**St. Paul—Sale for Local Assessment — Notice to Redeem — Publication.—**To constitute the 30 days' notice by 5 publications, required by the charter of the city of St. Paul, (Sp. Laws 1878, c. 26, § 4,) to be given before issuing a deed on a sale for non-payment of a local assessment, it is necessary that all five publications be made before the 30 days begin to run.

Plaintiff, claiming to be the owner and in possession of the land in controversy, brought this action in the district court for Ramsey county to determine the adverse claims of the defendants thereto. The defendants pleaded title in themselves, and prayed for judgment accordingly. After the commencement of the action, the defendant Merriam acquired all the title and interest of the other defendants.

The action was tried by *Brill*, J., who found that the defendant Merriam is the owner of the land in controversy, and ordered judgment accordingly. Plaintiff appeals from an order refusing a new trial.

The facts are very fully stated in the opinion. It was admitted on the trial that no notice of expiration of the time for redemption was ever issued or served in the case of the sale made in 1879 for the tax

of 1878. A notice of the expiration of the time for redemption from the sale made in 1878 for the tax of 1877 was served on W. K. Gaston, the husband of plaintiff, as shown by the following return, viz.:

"I hereby certify and return, that at the city of St. Paul, in said county and state, on the 22d day of July, 1880, I served on W. K. Gaston the within notice, by handing to and leaving with him, personally, a true and correct copy thereof, he, the said W. K. Gaston, being then and there in the actual possession and occupation of the within described property, I having made diligent search and inquiry for the within named heirs of W. S. Davison, but cannot find them in my said county. JAMES KING, Sheriff of Ramsey Co., Minn."

The land was assessed in the name of the "heirs of W. S. Davison." It appeared in evidence that the land was vacant and unoccupied till 1883.

*H. J. Horn* and *W. K. Gaston,* for appellant.

*Greenleaf Clark, H. C. Eller* and *W. L. Kelly,* for respondents.

MITCHELL, J. The matter in issue is the title to "the west half of the south-east quarter of the *south-west quarter* of section twenty-five, township twenty-nine (29) north, of range twenty-three (23) west." The plaintiff claims the premises both under the patent title and also under three tax deeds. The defendant claims under the patent title. This will be the first in order to be considered.

1. It is conceded that the land was conveyed by the United States by patent to one Charles R. Conway, who conveyed it in February, 1852, to one Vetal Guerin, under whom, as their common source of title, both parties claim. The evidence in support of plaintiff's chain of title consists of certain judgments rendered and docketed against Guerin, January 4, 1867, executions issued thereon November 13, 1876, on which the premises were sold, and a certificate of sale issued December 29, 1876, to one S. B. Shotwell, who quitclaimed to plaintiff, August 5, 1882. Defendant claims title through mesne conveyances under a deed from Guerin and wife to Charles L. Willis, alleged to have been executed on the fourth of March, 1853. The claim of defendant, and the theory upon which he tried the case, was that this deed, duly executed and correctly describing the premises, was filed for record, but was incorrectly recorded *in extenso,* and subsequently

lost. To establish this title, defendant introduced, under the objections and exceptions of the plaintiff, the following testimony:

(1) What purported to be the record *in extenso* of a warranty deed from Guerin and wife to Charles L. Willis, dated March 4, 1853, and filed for record March 10, 1853, and recorded in Book E of Deeds, page 340, in the office of the register of deeds of Ramsey county, in which the property conveyed is described as "the west half of the south-east quarter of section twenty-five, township twenty-nine (29) north, of range twenty-three (23) west."

(2) The record of a warranty deed from Willis and wife to William S. Davison, dated July 26, 1853, and recorded July 29, 1853, conveying "the west half of the south-east quarter of the *south-west quarter* of section twenty-five, township twenty-nine (29) north, of range twenty-three (23) west."

(3) The record of a quitclaim deed from Guerin and wife to Willis, dated June 5, 1869, and recorded June 8, 1869, of the premises last above described, in which it is recited that the deed was to confirm the deed between the same parties executed in March, 1853, and recorded in Book E of Deeds, page 340, and "to correct an error in the record description of said property in said original conveyance, in which said property is described as 'the west half of the south-east quarter of said section twenty-five;' *the words 'of the south-west quarter,' after said description, being omitted from the record.*"

(4) Deeds of quitclaim of the premises in dispute from the heirs of William S. Davison to the defendant Merriam, executed in 1883.

(5) The reception book from the office of the register of deeds of Ramsey county for the year 1853, in which there was the following entry:

| DATE. | GRANTORS. | GRANTEES. | DESCRIPTION. | DELIVERED. | FEES RECEIVED. | REMARKS. |
|---|---|---|---|---|---|---|
| 1853. March 10 2 P. M. | Vetal Guerin and wife. | C. L. Willis | West half of South-east one-fourth of *South-west one-fourth* Section 25, Township 29, Range 23. | C. L. Willis. | $1.00. | W. Deed. E. Deeds. 340. |

(6) The evidence of Willis, who testified "that he had no deed in his possession made by Vetal Guerin to him in March, 1853," and his attention being called to the record of the deed dated March 4, 1853, from Guerin and wife to him, "that the deed never came into his possession; that he had looked for the deed the past few days; that he didn't recollect of having given it to anybody; that he was satisfied it never came into his possession."

(7) The evidence of Mr. Olivier, the abstract clerk of the county, who testified that he had examined all the records relating to the south-east quarter of section twenty-five, township twenty-nine (29) north, of range twenty-three (23) west, and that Guerin never did own any property there, as shown by the records; that the records do not show that he ever owned any property in that quarter-section. It was also a conceded fact in the case that Guerin owned the premises in controversy on the fourth of March, 1853. So far as appears, Guerin never made any other disposition of these premises, nor ever made any claim to them after that date. Both Guerin and Davison had deceased before the commencement of this action.

On this evidence the court found, as a fact, that on the fourth of March, 1853, Guerin and wife conveyed the premises to Willis.

This branch of the case, therefore, raises three questions: (1) Was a foundation laid by proof of the loss of the original deed for the introduction of secondary evidence of its contents? (2) Was the evidence tending to prove the contents of the deed, and that it was incorrectly recorded, competent? (3) If so, did it justify the finding of fact?

In the first place, it clearly appears that *a* deed from Guerin and wife to Willis was executed, delivered, and filed for record in March, 1853. Willis testifies to nothing to the contrary. In view of the connection in which he says that the deed never came into his possession, we would clearly understand him as referring merely to the time after it was filed for record. But even if he meant that it never at any time came into his possession, this in no way proves that it was never *delivered.* He does not intimate that no such deed was ever executed, or that it was filed for record without his knowledge or consent. Manual possession of a deed by the grantee is not essen-

tial to a legal delivery. Delivery to an agent, or delivery to a stranger, or for record, even if done without the knowledge of the grantee, is, if followed by his assent, a good delivery. 3 Wash. Real Prop. (4th Ed.) 283, 284; *Stevens* v. *Hatch,* 6 Minn. 19, (64.) In this case, assuming that this deed conveyed the premises in question, Willis's assent and acceptance appear from his conveying them to Davison three months afterwards. The loss of the original is sufficiently established by the evidence of Willis, in connection with the entry in the reception book tracing the instrument out of the register's office. Hence the fact that a deed had been executed and delivered, and subsequently lost, must be taken as proved.

Again, while the statute makes the record of a conveyance competent evidence, it is not conclusive. Its effect may be rebutted by other evidence. Gen. St. 1878, c. 73, § 96. If a deed has been incorrectly recorded, the party claiming under it is not concluded by the imperfect record, (waiving for the present the question of the right of subsequent *bona fide* purchasers under the recording acts,) but may introduce in evidence the original deed, or, if that is lost, may introduce parol evidence of its contents and show that it was not correctly recorded. *Harvey* v. *Thorpe,* 28 Ala. 250; *Sams* v. *Shield,* 11 Rich. Law, (S. C.) 182; *Sexsmith* v. *Jones,* 13 Wis. 565. The entry in the reception book was competent evidence for these purposes. We shall not follow counsel for plaintiff in their able discussion of the questions as to what relation this bears to the record *in extenso,* or whether it constitutes constructive notice to subsequent purchasers in cases where the full record is incorrect. It is sufficient for present purposes that the reception book was a record or official register required by law to be kept by the register of deeds, and in which he was required to make these entries under the appropriate columns. Rev. St. 1851, c. 8, art. 2, § 4. Under the head of "Where Situated," or "Description," as it was more accurately called in this case, it was his duty to enter a description of the land conveyed. *Mapes* v. *County of Olmsted,* 11 Minn. 264, (367.) Whether this description should be in full, in the exact words of the deed, or whether it might be abbreviated, it is unnecessary to consider. It is to be made from an inspection of the instrument, and is required to be, and is presumed to be,

correct. Such a record or official register is competent evidence of all the facts therein entered in accordance with the requirements of law. 1 Greenl. Ev. §§ 483, 484. The original deed having been lost, the description in this entry was proper evidence to be considered in determining what were the contents of the instrument, and whether it had been correctly recorded *in extenso.*

In view of the general practice of recording evidence of title, the fact that the records do not show that a party ever had title to land is competent evidence to prove that he never owned it in fact. Indeed, that is usually the only way in which such a negative can be proved. The fact that Guerin never owned the land described in the full record, coupled with the further fact that he did own the land described in the reception book, was competent as bearing upon the question of the contents of the deed, and whether it had been correctly recorded. There was a discrepancy between the description in the reception book and that in the full record; and the fact that the grantor owned the one and did not own the other was proper to be considered in determining which was correct.

The deed from Guerin to Willis, executed in 1869 to correct the error in the record, having been executed and recorded after the rendition and docketing of the judgments which constitute the basis of plaintiff's title, was held by the court below not to be evidence against her, and was not considered by him, and hence need not be here considered at this time. It will, however, hereafter appear that this deed was competent and material upon another question, viz., that of notice to Shotwell at the time he purchased at the execution sale.

The remaining question in this connection is, was the evidence sufficient to justify the finding of fact? On this we have no doubt whatever. It appeared that at the date of the deed of March 4, 1853, Guerin owned the premises in dispute; that he never had any title to the premises described in the full record; that the register of deeds, with whom the instrument was filed, entered in the reception book the description of the premises in controversy as those described in the deed; that the grantee, Willis, within three months conveyed the premises by warranty deed,—premises to which he never had a shadow of title, unless acquired under the deed from Guerin; that

Guerin never made any other disposition of the premises, and, so far as appears, never afterwards made any claim to them. As against this chain of facts and circumstances we have merely the description contained in the full record. There is a much greater probability that the register inadvertently omitted the words "of the south-west quarter" in copying the deed, than that he erroneously inserted in the reception book these words not found in the original. The evidence, to our minds, proves almost to a moral certainty that the error occurred in copying the deed into the records.

The deed having been thus established, the question remains whether, under the recording acts, it is not void as against plaintiff, or those under whom she claims, either as *bona fide* purchasers or as judgment creditors, because not correctly recorded *in extenso*. The court below held that, notwithstanding the error in the full record, the entry in the reception book constituted constructive notice. We shall not decide whether this position is correct or not, for the reason that we arrive at the same disposition of the case upon another ground.

Assuming that a purchase at an execution sale stands upon the same footing, under the recording acts, with a purchase directly from the debtor, (2 Lead. Cas. Eq. 109, 110,) yet it is clear that plaintiff's grantor, Shotwell, was not in the position of a *bona fide* purchaser without notice. He made the purchase at the execution sale in December, 1876, while the confirmatory deed from Guerin to Willis, to correct the error in the record, was recorded in June, 1869. This deed, with its recitals, constituted complete notice to him at the time of his purchase. Hence, if plaintiff's title is to take precedence, it must be because the unrecorded deed of March, 1853, was void as against the creditors whose judgments were docketed in 1867.

Prior to 1858 all conveyances of real estate passed title without record as against all persons except *subsequent purchasers* in good faith, for a valuable consideration, whose conveyances should be first duly recorded. Rev. St. 1851, c. 46, § 24. A judgment creditor is not a purchaser in good faith within the meaning of this statute. *Greenleaf* v. *Edes*, 2 Minn. 226, (264;) *Baze* v. *Arper*, 6 Minn. 142, (220.)

The General Laws of 1858 (c. 52, § 1) provided that "every conveyance by deed, mortgage, or otherwise, of real estate within this

state, *hereafter made*, shall be recorded, * * * and every such conveyance not so recorded shall be void as against any subsequent purchaser, etc., * * * or as against any attachment levied thereon, or any judgment lawfully obtained, at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance." This statute is purely prospective, and by its terms is expressly limited to conveyances *thereafter* made. *Greenleaf* v. *Edes, supra; Johnson* v. *Robinson*, 20 Minn. 169, (189.) This section was incorporated into the Revision of 1866, (Gen. St. 1866, c. 40, § 21,) the words "hereafter made" only being omitted. The question, therefore, is whether this statute, as thus amended in 1866, is retroactive, and applies to conveyances theretofore executed, and made it incumbent upon the owners to record their deeds in order to preserve their validity as against judgments or attachments,—a thing which they were clearly not required to do prior to that date.

The General Statutes of 1866 were not a new body of laws, but a rearrangement in more systematic form of existing laws, with such amendments as the commissioners or legislature deemed desirable. So far as they were composed of existing laws they were a mere continuation of such laws, and not new enactments. Gen. St. 1866, c. 121, § 9. Section 21, chapter 40, is a mere continuation of Laws 1858, c. 52, § 1, with the words "hereafter made" omitted, and hence stands from that date as if those words had never been in it. But with these words omitted the statute is not in terms retrospective; nor is it at all necessary, in order to give it effect, to construe it as having retrospective operation.

It is a rule of statutory construction, as elementary as it is universal, that a law will not be regarded as retrospective unless such construction is essential to give it effect, or its terms are so explicit sa to preclude any other interpretation. *Kerlinger* v. *Barnes*, 14 Minn. 398, (526;) *Davidson* v. *Gaston*, 16 Minn. 202, (230;) *Giles* v. *Giles*, 22 Minn. 348; *State* v. *Waholz*, 28 Minn. 114. A statute which creates a new obligation, or imposes a new duty, in respect to transactions already past, would be retroactive. Sedg. Stat. & Const. Law, 188. Whether the legislature can impose upon a

party the duty of recording his deed in order to protect his property against judgments or attachments, when the duty did not exist when the deed was executed, we need not inquire. See *Varick* v. *Briggs*, 22 Wend. 543; *Robinson* v. *Rowan*, 2 Scam. 499; *Jackson* v. *Lamphire*, 3 Pet. 280. The power is at least so doubtful, and the exercising of it so liable to work inequitably, that a court will not infer an intention to exercise it unless there is a clear expression of the legislative will to that effect. No such intention is expressed in this statute. On the contrary, under the rules of construction already referred to, the act of 1858, so far as regards judgments and attachments, would have been entirely prospective in its operation if the words "hereafter made" had never been inserted. The words were superfluous, and the omission in the Revision of 1866 effected no real change in the law. It follows that the provision of statute declaring an unrecorded deed void as against attaching or judgment creditors does not apply to conveyances executed prior to the enactment of chapter 52, Laws 1858. The result is that plaintiff acquired no rights as against the defendant under the execution sale.

2. This brings us to the consideration of plaintiff's tax deeds. One of them is on a sale under the general tax law in September, 1878, for the taxes of 1877; the second, on a sale under the same law in September, 1879, for the taxes of 1878; the third, on a sale in 1880, for a local assessment under the charter of the city of St. Paul. The first two may be considered together.

Laws 1877, *c.* 6, § 37, provided that the holder of a tax certificate should, 90 days before the expiration of the time for redemption, present the certificate to the county auditor, who should thereupon prepare a notice to the person in whose name the lands were assessed, specifying, among other things, the amount required to redeem, and the time when the redemption would expire. This notice was to be delivered to the sheriff, who should within 20 days serve it and make return. Service was to be made personally, if the person could be found, and, if not, then upon the person in possession of the premises. If the person named in the notice could not be found and no one was in actual possession, then the auditor was to cause the notice to be published for three successive weeks in a newspaper. The act also

provided that in case of the failure of the holder of the certificate to present it within the time required, it might be presented afterwards, and thereupon notice might be issued and served as previously provided, and that the time of redemption should expire 60 days after the service of such notice.

We have had occasion recently to consider and construe the statute in *Merrill* v. *Dearing*, 32 Minn. 479, in which we held that this law was mandatory, and that the right of redemption did not terminate until after the required notice had been given. We also held that it was the law in force at the time of sale that must govern the right of redemption. In the present case no notice was ever served in either of these sales. None was ever issued in the case of the sale of 1879. In the other, notice, assuming it to be in due form, was never legally served. The premises were assessed in the name of the heirs of William S. Davison. They were vacant and unoccupied. Under these facts it can hardly be seriously claimed that service upon the husband and agent of the plaintiff was legal. Hence, if the act of 1877 referred to was still in force in 1878 and 1879, when these sales were made, it follows that the right of redemption still continues, and that plaintiff has as yet acquired no title.

This raises the question whether Laws 1877, *c.* 6, § 37, was repealed by implication by the tax law of 1878, (Laws 1878, *c.* 1.) This section was carried forward as still in force and incorporated into the General Statutes of 1878, (chapter 11, § 121,) which, by Laws 1879, *c.* 67, were declared competent evidence. The express repeal by Laws 1881, *c.* 10, § 22, amounted to a sort of legislative recognition of the act as in force up to that date. The law officer of the state, in his official opinions, treated it as still in force. Op. Attys. Gen. 512. This amounts to a practical construction, which, in view of the fact that it has doubtless been generally followed by public officials, and acted and relied on by tax-payers, a court would be very loath to disturb. But, without regard to any such consideration, we are satisfied that, according to well-settled rules of statutory construction, the "tax law" of 1878 worked no implied repeal of this section.

The general tax law of 1874 was a new law, introducing a new

system of enforcing the collection of taxes.    Sections 130–137 of this
act, as amended in 1877, fixed the redemption period at three years
from the day of sale.    Under this act no notice to the property owner
was required to be given after the sale and before the expiration of
the time for redemption.    This feature was introduced by Laws 1877,
c. 6, § 37.    This section, while incorporated into an act entitled "An
act to amend chapter 1, Laws 1874," was, in fact, never really a part
of the act amended.    It was given no place in the amended act, but,
like Laws 1877, c. 84, stands as a separate and independent act, *in
pari materia*, and supplementary to the chapter referred to in the title.
It was really independent of the general act regulating the *assessment
and collection* of taxes, and is the same as if made an independent
chapter entitled "An act requiring the holders of tax certificates to·
give notice of the time of the expiration of redemption."    Sections
130 and 137 of the act of 1874, fixing the time of redemption at three
years, remained unchanged, although, of course, this section 37 op-
erated to modify their provisions by making the expiration of the re-
demption period in three years conditioned upon the holder of the
certificate giving the required notice.    Chapter 1, Laws 1878, enti-
tled the same as the act of 1874, was not really a new law.    Between
1874 and 1878 the tax law of 1874 had undergone some 90 amend-
ments, many of them very crude and almost unintelligible.    To bring
order out of this chaos, and to reduce the law to a systematic form,
the law of 1878 was enacted, which is merely a rearrangement and
re-enactment of the law of 1874, with only such slight changes as
were necessary to put it in a more orderly and concise form.    Thus
sections 130 and 137 of the laws of 1874, fixing the time of redemption,
were incorporated into the law of 1878 as sections 90 and 96; the
only change here important being that the time of redemption was
again restored to two years, as in the original act of 1874.

The act of 1878, like that of 1874, was entirely silent upon the
subject of notice to property owners of the time when the right of re-
demption would expire.    That no evil might result from any over-
sight in carrying forward into this new arrangement provisions appli-
cable to the old, the repealing clause (section 120) was carefully re-
stricted in its operations to Laws 1877, c. 79, and "*acts and parts of*

*acts inconsistent*" with the new act. It can hardly be necessary to refer to the elementary rule that repeals by implication are not favored. All laws are to be presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is, therefore, a reasonable conclusion that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable and irresistible. The court is bound to uphold the prior law, if the two acts may well subsist together. Sedg. Stat. & Const. Law, 105; Potter's Dwar. 113; *Atty. General* v. *Brown*, 1 Wis. 513; *Moss* v. *City of St. Paul*, 21 Minn. 421.

It is also a well-settled rule of construction that provisions of an old law, by being embodied in a new one, are not to be deemed repealed and re-enacted, but to have been the law all the time. *Burwell* v. *Tullis*, 12 Minn. 486, (572;) *Kerlinger* v. *Barnes*, 14 Minn. 398, (526.)

Another rule is that a later law, which is merely a re-enactment of a former, does not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first. *Morisse* v. *Royal British Bank*, 1 C. B. (N. S.) 67; *Town of Maple Lake* v. *County of Wright*, 12 Minn. 287, (403;) *Barton* v. *Drake*, 21 Minn. 299; *Moss* v. *City of St. Paul*, Id. 421.

If, then, Laws 1877, *c.* 6, § 37, operated to modify or qualify the provisions of the law of 1874, regarding the time of redemption, it must be deemed as continuing in force to modify or qualify the same provisions re-enacted in the law of 1878, unless (1) the act of 1878 covers the entire subject covered by section 37, and was plainly intended as a substitute for it, and to furnish the only rules on the subject; or (2) unless the provisions of the two acts are so irreconcilably inconsistent that they cannot stand together. These are in substance the two grounds upon which plaintiff claims a repeal by implication. Whatever force there might otherwise be in the first of these positions is entirely destroyed by the restricted character of the repealing clause, viz., "all acts and parts of acts inconsistent with this act." This is an express limitation of the extent to which it was intended former acts

should cease to be in operation, and it is quite inadmissible to ingraft upon this express declaration of legislative intent an implication of a more extensive repeal. *Lewis* v. *Stout*, 22 Wis. 234; *Henderson's Tobacco*, 11 Wall. 652; *Patterson* v. *Tatum*, 3 Sawyer, 164. What has been already said sufficiently answers the claim that the two acts are inconsistent. The only suggestion of inconsistency is that sections 90 and 96, fixing the redemption period at two years, are inconsistent with section 37, under the provisions of which the time *might* extend beyond two years. But it is no more inconsistent with sections 90 and 96 of the new act than it was with sections 130 and 137, of which they are virtually a re-enactment; and, under the rule of construction already referred to, if the provisions of section 37 operated to modify or limit the first law, they must be deemed to remain in force to modify or limit in like manner the re-enactment. But there is no real inconsistency. The period of redemption still remains two years, if the holder of the certificate complies with all the requirements of law. If it extends beyond that time it is not alone because of the law, but by the act or omission of the holder of the certificate himself. There is no irreconcilable inconsistency, and no reason why the two might not subsist together the same as they did prior to the revision and re-enactment of 1878. The result is that, in our opinion, section 37, referred to, continued in force until expressly repealed by Laws, 1881, *c*. 10, § 22.

3. The deed issued by the city of St. Paul, upon a sale of the premises for a local assessment, was equally incompetent to establish title in the plaintiff, for the reason that no notice was ever given as required by the city charter. The charter (Sp. Laws 1878, *c*. 26, § 4,) requires that at least 30 days' notice, *and by at least five publications prior to the time when the right of redemption will expire* on any certificate issued for the non-payment of an assessment, shall be given by publication in the official newspaper of the city, that deeds will be issued by the city at the expiration of the time of redemption, unless the property is sooner redeemed. This is mandatory and must be strictly complied with, else the issue of a deed would be unauthorized. Cooley on Taxation, 365. In the case at bar the sale took place August 24, 1880. Hence the time of redemption would expire

August 24, 1882. The notice (assuming it to have been good in form) was first published on the 25th of July, and last so published on the 30th of July, 1882, and was to the effect that a deed would be issued by the city on and after August 25, 1882, unless the property was redeemed on or before August 24th. To make a thirty-days' notice by *five* publications, it was necessary that all five of the publications be made before the thirty days began to run. *Doughty* v. *Hope*, 3 Denio, 594, 601; *Bunner* v. *Eastman*, 50 Barb. 639; *Westbrook* v. *Willey*, 47 N. Y. 457. The deed was therefore issued without the proper notice, and is unauthorized and void.

Order affirmed.