# Commonwealth *v.* Curry.

*Habeas corpus—Courts — Jurisdiction — Supreme and Superior Courts—Illegal sentence—Criminal law.*

1. While the Supreme Court has original jurisdiction of applications for habeas corpus, ordinarily applications for the writ should go to other courts, having like jurisdiction, thus affording the Supreme Court time to perform its primary duty of reviewing the decisions of subordinate tribunals.

2. But where the application, in effect, requires the review of the sentence of a nisi prius tribunal, the Supreme Court will act, if it, rather than the Superior Court, is the most convenient tribunal in session at the time.

3. Where, however, the application is merely a substitute for an appeal to question errors during or prior to trial, it will be refused.

4. An application to the Supreme Court is proper where the relator is confined under a void or illegal sentence, and the condemnation to confinement for a greater period than that allowed by law on the indictment before the court, is, according to the established view in this State, an illegal sentence.

*Constitutional law—Title of act—Illegal sentence—Act of May 10, 1909, P. L. 495.*

5. It seems that the Act of May 10, 1909, P. L. 495, in so far as it provides for a maximum sentence of thirty years in certain cases, is sufficient in its title, and constitutional.

*Statutes—Repeals—Criminal law—Habitual offenders—Acts of May 10, 1909, P. L. 495; June 19, 1911, P. L. 1055—Sentence.*

6. The habitual-offender provision of the Act of May 10, 1909, P. L. 495, was not repealed by the Act of June 19, 1911, P. L. 1055.

7. As there is no express repeal of the Act of 1909, in the Act of 1911, the latter act would seem to fall, not within the rule as to implied revocations, but rather within the rule that, where the revised statute itself declares what effect it is to have on earlier acts, no other interpretation should be given it as a repealer of earlier legislation.

8. Where a statute provides that "all acts or parts of acts inconsistent herewith are repealed," ordinarily it repeals only those acts or parts of acts which are inconsistent with it.

*Criminal law—Verdict—General verdict— Sentence—Habitual Offender Act of May 10, 1909, P. L. 495.*

9. Where the first count of an indictment charges an offense which resulted in a maximum sentence of thirty years, and later counts charge a conviction in Pennsylvania, and another in New York, followed by imprisonment in both cases for more than one year, and the jury returns a verdict of "guilty" on the first count, and "not guilty" on the other counts, the sentence for thirty years, under the Act of May 10, 1909, P. L. 495, cannot be sustained, and the prisoner is entitled to be released on habeas corpus.

10. A verdict which specifically states a finding of guilty "on the first count," without more, is equivalent to a finding of not guilty on the other counts of the indictment.

11. A general and unlimited finding of guilty necessarily means guilty as indicted, and after such verdict, there is possibly a presumption that evidence was introduced sufficient to sustain all counts contained in the indictment including one as to prior convictions.

12. Where an indictment so charges, it may be that a general verdict of guilty comprehends an implied finding of confinement under sentences on prior convictions, when they are properly charged, but neither the presumption nor such an implied finding can be regarded as broader than the charge on these subjects in the indictment itself.

13. Where an indictment charges a conviction in another state, and imprisonment in a reformatory for more than one year, from whence defendant was removed to a state prison where he was held for over another year and subsequently paroled, such indictment is not sufficient under the Act of May 10, 1909, P. L. 495, to charge that the prisoner was, in the other state, "convicted, sentenced and imprisoned in a penitentiary for a term of not less than one year for crime."

*Criminal law—Sentence—Re-sentence.*

14. Where a prisoner sentenced for a maximum term of ten years, and released on parol after serving two years and ten months, then commits another crime and is sentenced for a minimum term of seven years and six months, and under the Act of March 10, 1909, P. L. 495, for a maximum term of thirty years, and after serving the minimum term, it is decided by the Supreme Court on habeas corpus proceedings that the maximum sentence of thirty years was illegal, the prisoner will be remanded to the lower court for re-sentence as he should have been sentenced at the time of his last conviction.

15. If, in such case, the prisoner claims that a confederate in the crime was sentenced at the time of the last conviction to only three years, and therefore that the time which he himself served should be accounted sufficient punishment, the Supreme Court will not consider such claim but will leave it to the lower court for its consideration when re-sentence is imposed.

16. According to the established practice in the Supreme Court governing applications for habeas corpus, a rule is allowed directed to the district attorney and the keeper of the jail or penitentiary, or to such other person as may have the petitioner in custody, to show cause why the writ should not issue, and, after the return day named in the rule, the Supreme Court acts on the petition, the answers thereto and the record of the court below, which (accompanied by copies of the indictment and the verdict as rendered) should be attached to the answer of the district attorney. The points of law raised by the pleadings are usually decided on the documentary evidence in the record, and the relator need not be produced unless the Supreme Court, deeming his presence necessary, so orders.

Petition to the Supreme Court for writ of habeas corpus. Miscellaneous Docket No. 4, page 344.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 18, 1926:

William Curry has petitioned this court for a writ of habeas corpus. Curry was convicted, in Erie County, on May 12, 1910, of burglary, and sentenced to the Western Penitentiary for an indefinite term, with a maximum of ten years. He was released on parole at the end of two years and two months, but subsequently, in 1914, was found guilty, in the same court, of attempting another burglary, and sentenced, on May 15th of that year, to the Western Penitentiary for an indefinite term, the minimum to be seven years and six months and the maximum thirty years.

While we have original jurisdiction in such matters, ordinarily applications for habeas corpus should go to other courts, having like jurisdiction, thus affording the Supreme Court time to perform its primary duty of reviewing the decisions of subordinate tribunals, yet, in

cases like the present, where the application, in effect, requires the review of the sentence of a nisi prius tribunal, this court will act if it, rather than the Superior Court, is the most convenient tribunal in session at the time; but where the application is merely a substitute for an appeal, to question alleged errors during, or prior to, trial, it will be refused: Halderman's Petition, 276 Pa. 1, 2; Com. v. Cooper, 277 Pa. 554, 556. An application for habeas corpus is proper, however, where the relator is confined under a void or illegal sentence (Com. v. Morgan, 278 Pa. 395, 396) ; and condemnation to confinement for a greater period than that allowed by law on the indictment before the court is, according to the established view in this State, an illegal sentence, which entitles the prisoner to the remedy here invoked: Com. v. Morgan, 278 Pa. 395; Halderman's Case, 53 Pa. Superior Ct. 554, 557; Com. v. McKenty, 80 Pa. Superior Ct. 249, 251.

Section 10 of the Act of June 19, 1911, P. L. 1055, provides that, "If any convict released on parole......shall, during the period of parole, be convicted of any crime punishable by imprisonment......[he] shall, in addition to the penalty imposed for such crime,......be compelled to serve in [a] penitentiary......the remainder of the term......which [he] would have been compelled to serve but for......said parole"; and the petitioner admits that this provision applies to his case.

The regular maximum penalty for the offense of which petitioner was last convicted is ten years (Act of March 13, 1901, P. L. 49), which, plus the time Curry had to serve on his original sentence, because of the breach of his parole, would make him subject to a sentence of 17 years and ten months, in all, as a maximum punishment, unless, for other lawful reasons, a longer sentence could be imposed.

Section 6 of the Act of May 10, 1909, P. L. 495, provides that, "when a person shall have twice before been convicted, sentenced, and imprisoned in a penitentiary

for a term of not less than one year, for any crime committed in this State or elsewhere within the limits of the United States," on conviction of a subsequent offense, "the court shall sentence such person to a maximum of thirty years"; and it was under this statute that the sentence now attacked was imposed.

While there is a suggestion in some cases (see, for instance, Com. v. McKenty, 52 Pa. Superior Ct. 332, 338; Halderman's Case, 53 Pa. Superior Ct. 554, 558) as to the possible lack of sufficiency of title to support the above provision of the Act of 1909, the more recent authorities, sustaining similar titles to subsequent criminal-sentence acts, appear to dispose of any doubt as to the constitutional validity of such legislation (see Com. v. Kalck, 239 Pa. 533, 537; Com. v. Sweeney, 281 Pa. 550, 557, and cases there cited); but it is not necessary to discuss this matter now, for, on the record here involved, as we shall later point out, the provision in question does not adversely affect the present petitioner.

The respondents contend that the record before us sufficiently discloses both the prior conviction in this State, above referred to, and also a conviction and penitentiary sentence in New York, hereafter more specifically discussed; hence the applicability of the Act of 1909.

The petitioner claims, on the other hand, that the above legislative provision from the Act of 1909 was revoked by the Act of June 19, 1911, supra (which ordains that "all acts or parts of acts inconsistent herewith be and the same are hereby repealed"), and, further, if the provision is still the law, then the present record fails to show that it applies to his case.

Section 6 of the Act of 1911, although in very much the same phraseology as section 6 of the Act of 1909, entirely omits the provision we are now considering, that is, for an increased maximum sentence on conviction of a third offense; but we cannot agree that this shows the "legislature intended to abolish the habitual

criminal feature of the law of 1909," as is contended by petitioner.

Where there is no specific repeal of a prior act, or of any named part of it, by a subsequent statute on the same general subject, and where, as in the present instance, the latter, while omitting a definite provision of the former, yet contains nothing touching on, much less actually antagonistic to, the omitted part, the last legislation, in the absence of a demonstrated intention to deal with every aspect of the general subject in hand, does not necessarily repeal such omitted part, particularly where, as here, the later statute confines its repeal of former acts to such parts of them as are inconsistent with the provisions contained in the repealing statute: Com. v. Crowl, 245 Pa. 554, 559. Of course, it is well established that a subsequent statute, evidently intended as a revision of the whole subject-matter of, and a substitute for, prior legislation, though it contains no express words of repeal, "must, on general principles of law, as well as in reason and commonsense, operate to repeal the former" (Johnston's Est., 33 Pa. 511, 515; Long v. Phillips, 241 Pa. 246, 249; Murdoch v. Biery, 269 Pa. 577, 580; Reeves' App., 33 Pa. Superior Ct. 196, 201; see also Buchannon v. Com., 95 Ky. 334, 25 S. W. 265; People v. Fisher, 274 Ill. 116, 143 N. E. 47, 48); but this rule does not apply to the legislation under discussion.

Here, instead of making it plain that the Act of 1911 was to stand as a substitute for the Act of 1909, and by that course working a repeal of all parts of the last-mentioned statute, or of expressly repealing it, the legislature inserted in the Act of 1911 the provision, to which we have already called attention, repealing such parts of the earlier statute as were inconsistent with the provisions of the later one; and, while the Act of 1911 bears a title much like the Act of 1909, its provisions closely following the latter, making changes here and there, yet our cases generally have treated these statutes as standing together. In Com. v. Kalck, 239 Pa. 533,

543, where they are both reviewed, we point out that the Act of 1911 was primarily intended to "mitigate the severity" of punishments theretofore "prescribed by law." When we bear the fact just stated in mind, it well may be the draftsman of the Act of 1911, and the legislators who passed it, considered that, though the habitual-criminal provision of the Act of 1909 was germane to the subject of sentencing convicted prisoners, dealt with in the Act of 1911, yet the provision in question was not appropriate for insertion in a statute primarily intended to "mitigate severity," and it was omitted from the Act of 1911 for this reason, and not as an implied repeal of such provision; therefore it still stands in the law. There being no express repeal of the Act of 1909, the legislation in hand would on the whole, seem to fall, not within the rule as to implied revocations, but rather within the rule that, where the revised statute itself declares what effect it is to have on earlier acts, no other interpretation should be given to it: 36 Cyc. 1081; Endlich on the Interpretation of Statutes, section 203. That is to say, where the statute, as in the present instance, contains a clause providing that "All acts or parts of acts inconsistent herewith are hereby repealed," it repeals only those acts or parts of acts which are in fact inconsistent with it: Patterson v. Tatum, 18 Fed. Cas. No. 10830, 3 Sawy. 164; Johnson v. So. Mutual B. & L. Assn., 97 Ga. 622, 25 S. E. 358, 359; Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614, 621. We conclude that the habitual-offender provision of the Act of 1909 still stands; but whether it applies to the present case is another question, which will be considered later on.

Here, as already said, the petitioner, while admitting he may properly be compelled to serve out the balance of his original term, contends that, this having expired, the rest of the sentence is unlawful (Com. v. Reifsteck, 271 Pa. 441, 446), and, even though the above-mentioned provision of the Act of 1909 may still be in force, yet, on the record now before this court, he is not subject to the

extra punishment stipulated for in that statute, but should either be discharged, as sufficiently punished, or resentenced (Com. v. Halderman (No. 1), 59 Pa. Superior Ct. 399, 401; Halderman's Petition, 276 Pa. 1, 2) under the Act of 1901, supra, and section 6 of the Act of 1911, which provides that the limit of confinement shall "never exceed the maximum time......prescribed as a penalty for [the particular] offense" involved, subject, of course, to the provision for extra punishment contained in section 10 of the Act of 1911, quoted in the third paragraph of this opinion.

The indictment here in question contains several counts. The first charges the offense which caused the sentence of thirty years now under attack, and later counts charge the prior Pennsylvania conviction and sentence. These later counts also charge that, on October 29, 1903, the prisoner was found guilty in the State of New York of grand larceny and "thereupon sentenced to be confined in the State Reformatory at Elmira, New York, until discharged according to law; that......[he] was conveyed to and imprisoned in the said Elmira Reformatory......up to [January 3, 1906], and upon the last mentioned date...... was transferred to the New York State Prison, located in the city of Auburn,......and was confined and held as a prisoner in the said New York State Prison......up to [October 10, 1907],.......upon which......date [he] was......released......on parole; that because of alleged violation of the regulations of his parole [he] was, on [December 9, 1907,] returned to the [said] New York State Prison ......and......there held as a prisoner until [June 26, 1908], and upon the last mentioned date.....was..... reparoled."

A general and unlimited finding of guilty, which is the only sort of verdict recited in the pleadings before us, necessarily means guilty as indicted (Com. v. Birdsall, 69 Pa. 482, 484, 485); and, after such a verdict, possibly

there is a presumption that evidence was introduced sufficient to sustain all counts contained in the indictment (Solliday v. Com., 28 Pa. 13, 15), including one as to prior convictions. Moreover, where an indictment so charges, it may be that a general verdict of guilty comprehends an implied finding of confinement under sentences on prior convictions; but neither this presumption nor such an implied finding can be regarded as broader than the charge on these subjects contained in the indictment itself: 16 C. J. 1113, section 2606.

It will be noticed that the count in the present indictment, reciting the circumstances of the offense in 1903, alleges that the prisoner was found guilty in New York of grand larceny and sentenced to be imprisoned in a state reformatory until discharged according to law; that he was confined in the reformatory for more than one year following the date of sentence, and then transferred to a New York state prison, where he was held for over another year; that he was paroled and subsequently returned to the prison for a few months and then reparoled. This is not a sufficient charge to show, in the words of our Act of 1909, that the petitioner was, in New York, "convicted, sentenced, and imprisoned in the penitentiary for a term of not less than one year, for a crime." The original New York sentence was to a state reformatory, not to a penitentiary, and, so far as this indictment shows, his transfer to the state prison at Auburn, if that is a penitentiary, may have been caused by some breach of discipline of the reformatory, rather than inflicted as punishment for a "crime," as required by the habitual-offender provision of the Act of 1909, supra; hence the indictment itself fails to bring the case within the terms of that statute.

But even if the case be treated as though the prisoner had been formally accused in such manner as to bring him within the Act of 1909, a copy of the verdict on the indictment (furnished to this court since the answers to

relator's petition were filed) discloses that, in point of fact, it was returned thus: "We, the jury empanelled and sworn to try the issue joined between the Commonwealth of Pennsylvania and William Curry, find defendant guilty on first count." This is equivalent to findings of "Not guilty" on the other counts (Girts v. Com., 22 Pa. 351, 352), including the one charging convictions of, and sentences for, prior offenses, or, in other words, the habitual-offender count, on which the prisoner was sentenced to a maximum of 30 years. Hence the record not only contains no findings, implied or otherwise, to support the maximum sentence imposed, but actually negatives those required for that purpose. Such being the case, petitioner was improperly sentenced as an habitual offender, and is entitled to relief on habeas corpus.

Finally, the petitioner suggests that, since his confederate in the crime for which he was sentenced to a maximum of thirty years received a sentence of only three years, the time which he, the relator, has already served should be accounted sufficient punishment, and he should be discharged in the present proceeding; but we shall leave this plea to the consideration of the court below, whose duty it is to sentence the prisoner (Halderman's Case, 53 Pa. Superior Ct. 554, 557, 558) as he should have been sentenced at the time of his last conviction: Com. v. Halderman, 276 Pa. 1, 5.

According to the established practice in the Supreme Court governing applications for habeas corpus, a rule is allowed, directed to the district attorney and the keeper of the jail or penitentiary, or to such other person as may have the petitioner in custody, to show cause why the writ should not issue, and after the return day named in the rule, we act on the petition, the answers thereto and the record of the court below, which (accompanied by copies of the indictment and the verdict as

rendered) should be attached to the answer of the district attorney. The points of law raised by the pleadings are usually decided on the documentary evidence in the record, and the relator need not be produced unless this court, deeming his presence necessary, so orders.

Now, January 25, 1926, following the practice above indicated, it is ordered and adjudged that the rule previously allowed, to show cause why a habeas corpus should not issue, be made absolute, and the application is treated as though the writ had issued and William Curry were before us; and it is further ordered and adjudged that the prisoner be remanded for resentence and that the record be remitted to the court below to the end that appropriate process may be issued to bring him into that tribunal for such resentence in accordance with the law as here announced.