## Commonwealth ex rel. Hennessy
## *v.* Smith, Warden.

Argued November 22, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Herbert L. Maris,* for relator.

*J. Boyd Landis,* District Attorney.

*C. James Todaro,* and with him *Edward Friedman,* Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for respondent.

OPINION BY MR. JUSTICE STERN, January 3, 1938:

Fifty years have gone by since relator started his criminal career and was sentenced to the House of Refuge in Philadelphia for incorrigibility. During that period his record shows twenty-five additional arrests, mostly for larceny, larceny from the person, and receiving stolen goods; fourteen of these cases resulted in convictions, upon which sentences of varying terms in jails and penitentiaries were imposed. On December 10, 1927, he was sentenced in Cumberland County to the Eastern State Penitentiary, on a conviction for larceny from the person, to a term of three and a half to thirty years, under the Act of May 10, 1909, P. L. 495, section 6, the indictment having set forth the prior convictions which justified the application of that statute. Notwithstanding his unsavory record and the fact that he had been previously paroled from the Eastern State Penitentiary only to commit further crimes, he was again paroled, on September 26, 1931, shortly after the expiration of the minimum term of three and a half years,—a parole which apparently ignored the very purpose of the habitual-offender provision of the act. Relator soon again fell into the toils of the law, was arrested in Florida and in Georgia, and in the latter state, in September, 1933, was convicted and imprisoned. On July

29, 1934, he was returned to the Eastern State Penitentiary for violation of his parole and to serve the unexpired portion of the sentence imposed December 10, 1927, amounting to somewhat more than twenty-six years.

Relator now asks release on habeas corpus. He contends that the Act of May 10, 1909, P. L. 495, was repealed by the Act of June 19, 1911, P. L. 1055, and that therefore the imposition of the thirty-year penalty was unauthorized.

The Act of 1909 provided for probations and paroles and for indefinite terms of sentence, the minimum not to exceed one-fourth of the maximum. Section 6 provided "That when a person shall have twice before been convicted, sentenced, and imprisoned in a penitentiary for a term of not less than one year, for any crime committed in this State, or elsewhere within the limits of the United States, the court shall sentence said person to a maximum of thirty years." The Act of 1911 covered substantially the same subject matter, but provided that the minimum could be any term short of the maximum. The provision fixing a maximum of thirty years in case of two prior convictions was omitted, and it is upon this omission that relator relies. The act did not repeal any designated prior acts, but only acts or parts of acts inconsistent therewith.

In *Commonwealth v. Curry*, 285 Pa. 289, the then Chief Justice discussed at length the question here involved, and concluded that the Act of 1911 did not work a repeal of the third-conviction provision of the Act of 1909. It is true the *Curry* case was decided upon the ground that the record did not sufficiently indicate two prior convictions, and what was said in regard to the repeal of this provision of the Act of 1909 was probably dictum, but the reasoning of the court on that subject is so convincing as to compel its adoption in the present case.

The Act of 1911 did not deal with terms of sentences for specific crimes, but merely with a general scheme requiring the imposition of indeterminate sentences. When it provided in section 6 that "the maximum limit shall never exceed the maximum time now or hereafter prescribed as a penalty for such offense," the maximum time thus referred to varied under statutory provisions according to whether the offense was an initial one or there had been prior convictions. If the crime for which relator was sentenced in 1927 had been the first one committed by him, the "maximum time prescribed as the penalty for such offense" was five years, under section 102 of the Act of March 31, 1860, P. L. 382; if it was the second one of which he was convicted, ten years, under section 182 of that act; if the third one of which he was convicted, thirty years, under section 6 of the Act of 1909. It is thus clear that there is no inconsistency between section 6 of the Act of 1911 and section 6 of the Act of 1909, nor, for the same reason, between section 6 of the Act of 1911 and any other of the then existing habitual-offender acts, such as that of April 14, 1893, P. L. 17, prescribing life imprisonment for a second conviction of second-degree murder,* or section 182 of the Act of March 31, 1860, P. L. 382, prescribing generally a double sentence in cases of one previous conviction. In the Act of 1911 the "maximum time . . . prescribed as a penalty for such offense" meant the maximum time for the offense so prescribed according to whether it represented a first, second or third conviction.

The rule is discharged and the petition of relator dismissed.

---

*In *Commonwealth v. Kalck*, 239 Pa. 533, 539, 540, it was expressly stated that the Act of April 14, 1893, P. L. 17, was not repealed by either the Act of 1909 or of 1911.