## Commonwealth v. Boyer et al.

*John H. Maurer,* for Commonwealth.

*John R. K. Scott* and *William T. Connor,* for defendants.

LEVINTHAL, J., January 12, 1940.—Defendants were jointly indicted for unlawfully possessing alcoholic liquor. Included in the indictment were counts charging that defendants Duff and Julius Boyer on prior occasions had pleaded guilty to and were sentenced for violations of the Pennsylvania Liquor Control Act, under which the penalty for a second conviction is considerably heavier than that for the first offense: Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, sec. 610, 47 PS §744-610. Contending that the inclusion of such averments in the indictment is not only highly prejudicial but also violative of the spirit of the Act of March 15, 1911, P. L. 20,

sec. 1, 19 PS §711, counsel for defendants have moved to quash the indictment. It is this motion which is now before us.

So-called "habitual criminal" statutes are not new to Pennsylvania law. See Criminal Code of March 31, 1860, P. L. 382, sec. 182, 18 PS §3731, Act of May 10, 1909, P. L. 495, sec. 6, 19 PS §1086, and Act of April 29, 1929, P. L. 854, 19 PS §921. Since the first enactment, however, courts and lawyers have wavered as to the proper procedure for bringing on record the fact of prior convictions in order to subject defendant to the more severe punishment.

In the absence of statutory direction, most jurisdictions have required an averment of the prior conviction in the indictment and have permitted the jury to try all issues at the same time. See e. g., State v. Findling, 123 Minn. 413, 144 N. W. 142 (1913), People, etc., v. Sickles, 156 N. Y. 541, 51 N. E. 288 (1898), and Keeney v. Commonwealth, 147 Va. 678, 137 S. E. 478 (1927). Many have done so "protestingly and because of a supposed inability to do otherwise", pointing to the English statute to prove the necessity of legislative action to correct whatever evils may lie in this accepted mode of procedure: Act of 14 & 15 Vict., c. 19, sec. 9, 20 Eng. Stat. at L. 498 (1851) (providing for postponement of inquiry into former convictions, or the reading of averments to that effect in the indictment until after the jury has found defendant guilty of the subsequent offense). See 31 Yale L. J. 440. That evils do exist is never denied. For under this system, matter prejudicial to the defendant and incompetent under ordinary evidentiary rules is presented to the jury along with evidence to substantiate the substantive crime charged. The obvious result, it seems, no matter how carefully the jury may be cautioned by the court, is that any doubts arising in the jurors' minds are resolved against, rather than in favor of, the criminally-labeled defendant. This is doubly lamentable in a case

where, as here, increased punishment follows a verdict of guilty.

In recognition of these obvious defects, an increasing number of States have passed statutes permitting the questions of identity and prior conviction to be submitted to the jury only after trial and conviction of the principal offense: State v. Zywicki, 175 Minn. 508, 221 N. W. 900 (1928) ; People of the State of N. Y. v. Gowasky et al., 244 N. Y. 451, 155 N. E. 737 (1927) ; State v. Smith, 128 Ore. 515, 273 Pac. 323 (1929). In Connecticut, an eminently fair procedure was evolved by the court without any statutory authorization. Agreeing that the prior· convictions must be alleged in the indictment so that defendant be given notice of his prosecution under the "second offender" statute, nevertheless, through the use of two-page indictments and the withholding from the jury of substantiating evidence until after a verdict of guilty, the court guaranteed defendant his rightful protection: State of Connecticut v. Ferrone, 96 Conn. 160, 113 Atl. 452 (1921). It is interesting to note that in at least one State not only is such an averment not needed in the indictment but the entire issue is taken from the jury and determined by the court when the time comes for fixing sentence: Levell v. Simpson, etc., 142 Kan. 892, 52 P.(2d) 372 (1935), noted in 35 Mich. L. Rev. 143 (1936).

Pennsylvania, it is contended, has in numerous appellate court cases affixed its stamp of approval upon the prevailing majority practice. A careful analysis of those decisions will show, however, that the question is not entirely beyond debate.

In the two earliest cases dealing with the problem, convictions were reversed because *nowhere in the record* did the fact of prior conviction and sentence appear, and the court apparently had determined this fact on its own knowledge: Smith v. Commonwealth, 14 S. & R. 69 (1826) ; Rauch v. Commonwealth, 78 Pa. 490 (1875). Though in both cases there is language to the effect that

"the former convictions did not appear in the indictment", the cases hold no more than that the increased punishment for a second offense cannot be sustained where the record fails to disclose that fact. As authority for us, they are negative only. The propriety of some other mode of procedure was not before the court and was therefore not discussed. The following cases, relied upon by the Commonwealth, are merely further illustrations of the same principle: Halderman's Case, 53 Pa. Superior Ct. 554 (1913); Commonwealth ex rel. v. Smith, etc., 129 Pa. Superior Ct. 196 (1937); Commonwealth ex rel. v. Ashe, etc., 132 Pa. Superior Ct. 405 (1938); Commonwealth ex rel. v. Ashe, etc., 133 Pa. Superior Ct. 509 (1938). In Commonwealth ex rel. v. Smith, etc., 328 Pa. 308 (1938), though the indictment did contain such an averment, no attack was made upon that procedure.

Kane v. The Commonwealth, 109 Pa. 541 (1885), and Commonwealth v. Payne, 242 Pa. 394 (1913), appear to be the only instances where objections duly taken were denied and the court sanctioned the inclusion in the indictment of defendant's former convictions, observing that "in this way alone can the provisions of the statute be carried out." Not only was the court's observation unsupported by any reasoning, but in addition in both cases the result was based upon the authority of the Rauch case, which, as we have pointed out, did not impel the conclusion reached in these later decisions. Furthermore, the Payne case, which was subsequent to the Act of 1911, did not consider the effect of that statute.

The injustice of this practice did not go unnoticed by Pennsylvania jurists. Chief Justice Paxson, when a common pleas judge, pointed out the limited nature of the holding in Smith v. Commonwealth, supra, decried the anomalous practice of making the bill of indictment itself, supposedly a protective device for defendant's benefit, the instrument of his conviction; and suggested the institution of a proceeding subsequent to verdict to effect the mandates of the Act of 1860: Commonwealth v. Mor-

row, 9 Phila. 583 (1872). In Commonwealth v. Hagan, 20 Phila. 392 (1891), Judge Arnold adopted his suggestion by permitting the district attorney after a plea of guilty to file of record a suggestion of defendant's previous convictions which was then read to the prisoner. In defending this practice, the court took issue with the Supreme Court's observation in the Kane case that only by incorporating such facts in the indictment could the purpose of the statute be effected, indicating that an issue could be framed for the jury should defendant wish to dispute the facts contained in the suggestion.

Eighteen years later, Justice von Moschzisker, also a trial judge at the time, disapproved of that procedure in the absence of statutory authorization, yet urged the desirability of enacting legislation similar to the English statute: Commonwealth v. Aul, 18 Dist. R. 1040 (Phila. O. & T. 1909). To him the former conviction and imprisonment were essential elements of the crime charged. Therefore, they had to be alleged in the indictment and proved before the jury as part of the Commonwealth's case in chief just as all other material facts involved in the trial of a case. Since the only recognized ways of charging one with a crime were by indictment or information, he could not sanction putting defendant "to trial on material facts constituting elements of the crime for which he is to be punished, if convicted, on a mere suggestion filed of record" (p. 1045). Despite this, he did admit the need for procedural reform, even without statutory aid, and his plan for drawing indictments with two counts giving to the prisoner the choice of separate trials on each count is not far different from the method established by the Connecticut court in the Ferrone case.

Apparently the last case in which a different type of procedure was successfully employed was Commonwealth v. Burwell, 21 Dist. R. 197 (Northampton Co. 1911). Shortly prior to that case, the legislature had passed the Act of 1911 providing that a defendant should not be asked on cross-examination any question tending to show

he had been convicted of any other offense unless he first put his character in issue: Act of March 15, 1911, P. L. 20, sec. 1, 19 PS §711. Considering this "a move in the right direction" to secure to defendant a fair trial, President Judge Staples indicated he would not permit the district attorney to nullify its effect by inserting such a count in the indictment and offering proof thereof at the trial. Instead, he adopted the procedure outlined by Judge Arnold; a suggestion of record should be filed by the Commonwealth whereupon a rule be granted on defendant to show cause why he should not be sentenced under the "habitual criminal" statute; if defendant deny any facts alleged, an issue would then be framed and submitted to the jury. (It may be noted, however, that the indictment before Judge Staples did contain these objectionable averment, yet it was not quashed. On the other hand, by refusing to receive evidence of the former convictions at the trial, the court rejected the authority of the Kane case where such practice was approved.)

This somewhat laborious review of the authorities makes it clear that Pennsylvania is not definitely committed to the procedure prevailing elsewhere. Three principles have, however, been laid down by our Supreme Court: (1) The heavier penalty *cannot* be imposed unless the former conviction appears somewhere in the record; (2) defendant is entitled to a jury trial on the questions of identity and prior conviction; (3) if these facts *are averred* in the indictment an attack thereon will fail. It might be added that before the Act of 1911 it was not reversible error to admit evidence at the trial of the principal issue to support those averments. On the other hand the appellate courts have never ruled on the propriety of a procedure whereby the issues raised under the "second offender" laws, though appearing in the indictment, are withheld from the jury until after a verdict of guilty on the substantive offense. Furthermore, in at least one instance, namely, in dealing with certain types of fourth offenders, our legislature has expressly approved a

method of imposing the heavier penalty in a proceeding distinct from the trial for the fourth offense itself. See Act of April 29, 1929, P. L. 854, sec. 4, 19 PS §924.

In view of the holding in Commonwealth v. Payne, supra, where a motion to strike the added averments in the indictment was denied, we are restrained from quashing the indictment in the instant case. However, there is nothing to prevent defendants' attorneys from moving the trial judge, when the case appears before him, to rule out evidence of the prior convictions until the jury returns a verdict on the substantive offense. Nor is there any reason why the damaging statements in the indictment itself need be submitted to the jury on their retirement. Though the indictment is usually sent out with the jury, that is largely a matter for the discretion of the trial judge. See 2 Sadler on Criminal Procedure in Pennsylvania (1937) sec. 569, and 120 A. L. R. 463. If he fears it contains matter prejudicial to the prisoner, it is within his power to withhold it altogether, or to submit a copy with the offensive parts removed, or to cover up and seal those portions. See Commonwealth v. Reinschreiber, 276 Pa. 262, 264 (1923). A motion seasonably taken at the close of the trial could thus insure defendant the same protection granted him in other States either by statute or by judicially created procedure. Nor is there any principle in our reported cases which would prevent the adoption of this practice. Though Justice von Moschzisker, in the Aul case, felt it necessary to have these facts, which he considered essential elements of the substantive crime, proved along with all other material facts, his view has not been generally adopted. "The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only": Graham v. State of West Virginia, 224 U. S. 616, 624 (1912); McDonald v. Massachusetts, 180 U. S. 311, 313 (1901) (construing similar statutes). If this is true, defendants' guilt or innocence is in no way dependent upon proof of former convictions.

It should, therefore, be within the power of the court to separate those issues and postpone the determination of the applicability of the heavier penalty provisions until after the trial of the principal offense.

The motion to quash, as we have indicated, must be denied. Though the procedure outlined above is, of course, not binding on the trial judge, we have expressed our opinion in that respect because we too feel the need for the adoption of some fairer method of effectuating the purpose of statutes imposing heavier penalties upon second offenders and "habitual" criminals.