JACKSON *v.* MADISON COUNTY.

Opinion delivered December 19, 1927.

1. COUNTIES—POWERS OF COUNTY COURT.—Under Const. art. 7, § 28, the county court is the general fiscal agent of the county, and has power to do all things necessary to the management of its internal affairs.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS.—In construing constitutional amendments, the courts keep in view the Constitution as it stood at the time the amendment was made, the

evil to be remedied by the amendment, and the amendent proposed, by which the evil is to be remedied.

3. COUNTIES—OBJECT OF AMENDMENT 11.—When the whole scope and purpose of Amendment 11 is considered, it is evident that it was intended to provide for the payment of county warrants outstanding at the time when the amendment was adopted, as well as to keep the counties within the amount realized from the maximum tax levy for county purposes in their yearly expenditures for running the county government in the future.

4. COUNTIES—CIVIL DIVISIONS OF THE STATE.—Under Constitution of 1874, counties are civil divisions of the State for political and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government.

5. COUNTIES—DUTY TO ISSUE BONDS.—Where it affirmatively appears that the ordinary governmental expenses of the county will require a maximum tax levy of five mills annually, leaving nothing for the payment of warrants outstanding at the time of the adoption of Amendment 11, it became the imperative duty of the county court to issue bonds to pay such outstanding warrants, and its action in failing to do so is the subject of judicial review.

Appeal from Madison Circuit Court; *J. S. Maples,* Judge; reversed.

### STATEMENT OF FACTS.

This appeal is prosecuted to reverse a judgment of the circuit court refusing to issue a writ of mandamus to compel the county court of Madison County to issue interest-bearing bonds under Amendment No. 11 for the payment of its outstanding warrants.

The facts raising the issues in this appeal may be stated in a condensed form as follows: Appellant, E. F. Jackson, was, on and prior to December 7, 1924, and is now, the holder of $14,045.86 of valid county warrants of Madison County. These warrants, together with other warrants, aggregating the sum of $30,000, were outstanding at the time of the adoption of Amendment No. 11 to the Constitution, on December 7, 1924. It was shown to the county court of Madison County that the maximum tax levy of five mills under our Constitution was consumed in payment of the annual budget of Madison County, and had been so consumed for several years past. It was also shown that the value of property in

said county is decreasing and that there is no prospect, for a reasonable time in the future, for any increase in the value of the taxable property so that the maximum levy for county purposes will meet the annual budget for running the county government and leave any margin for the payment of warrants outstanding at the time of the adoption of Amendment No. 11.

Application was made to the county court, under these facts, to issue interest-bearing bonds in payment of said outstanding warrants and to make a levy of not exceeding three mills on the dollar, as provided in said Amendment No. 11, for the payment thereof. The county court refused to issue the bonds, and application for mandamus was made to the circuit court to compel it to do so. The circuit court dismissed the application of appellant for the writ of mandamus, and, as above stated, the case is here on appeal.

*Duty & Duty*, for appellant.

*F. S. Rice* and *J. B. Harris,* for appellee.

HART, C. J., (after stating the facts). In the beginning it may be stated that, under our Constitution, a county court is the general fiscal agent of the county, and has, in general, power to do all things necessary to the management of its internal affairs. *Leathem & Co.* v. *Jackson County,* 122 Ark. 114, 182 S. W. 572, Ann. Cas. 1917B 438; and *Martin* v. *State,* 171 Ark. 576, 286 S. W. 873. Bearing this in mind, the particular question raised by this appeal is whether or not the county court is bound, under any circumstances, on the application of the holder of warrants outstanding at the time Amendment No. 11 was adopted, to issue interest-bearing bonds in payment therefor; or, in short, whether the discretion given the county court, as heretofore held by this court, is the subject of judicial review. In deciding this question we deem it proper to review, in a brief way, our previous decisions construing the Amendment and the rules of interpretation which the court has endeavored to apply.

From the early history of the court to the present time, in determining the intention of the framers of a

constitutional amendment, the court has kept in view the Constitution as it stood at the time the amendment was made, the evil to be remedied by this amendment, and the amendment proposed by which the evil is to be remedied. *State* v. *Scott,* 9 Ark. 270; *Ferrell* v. *Keel,* 105 Ark. 380, 151 S. W. 269; *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 783; *Combs* v. *Gray,* 170 Ark. 956, 281 S. W. 915; *Pioneer Construction Co.* v. *Madison County,* 174 Ark. 298, 296 S. W. 729; and *Polk County* v. *Mena Star Co., ante* p. 76. In other words, it is the duty of courts to give effect to all provisions of an amendment and harmonize them by construing the language used according to its natural and ordinary meaning, to the end that the object and purposes sought by the. framers of the amendment may be accomplished.

Amendment No. 11 is very broad in its scope, and evidently contemplated a radical departure from the existing way of managing the fiscal affairs of counties, and manifestly intended to place them on a cash basis and to keep them so. When its whole scope and purpose is considered, it is evident that it was intended to provide for the payment of county warrants outstanding at the time the amendment was adopted as well as to keep the counties within the amount realized from the maximum tax levy for county purposes in their yearly expenditures for running the county government in the future. So it will be readily seen that, in order to harmonize the provisions of the amendment and at the same time to remedy the defects in the Constitution on the same subject, grave and perplexing difficulties necessarily arose in the minds of the officers whose duty it became to carry into effect the provisions of the amendment, and in many instances these perplexities and doubts could only be settled by an appeal to the courts. In turn it has given the courts great concern to interpret the amendment in such a way as to carry out the object and purposes of the framers of it by giving the language used its ordinary meaning and by giving some effect to every

provision of the amendment without emphasizing or giving undue prominence to any part of its provisions.

In construing the amendment the court has recognized that, under our Constitution, counties are civil divisions of the State for political and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government. *Cole* v. *White County,* 32 Ark. 45; and *Pulaski County* v. *Reeve,* 42 Ark. 54.

The court has also recognized that the only means of payment of the debts contracted by counties is by levy of taxes on property in the county, as provided for in the Constitution. Keeping this in view, we have held that the quorum court, which is presided over by the county judge, may make an annual levy up to its constitutional limit for county purposes, and that the county court may set apart so much of this levy for the building of a new courthouse as may be spared from meeting other governmental expenses in running the county. The court has said that, where the county court, in good faith, finds, upon an investigation of the fiscal affairs of the county, that there will be a margin left, if spread over a series of years, sufficient to meet the annual payments for the construction of a courthouse, such contract will be a valid one, and the annual payments will be considered allocated or appropriated to the construction of a courthouse, and cannot be used for any other purpose. The court said that this will not amount to an appropriation of the annual payments out of a specific fund, because all payments must be made out of the county general revenue fund, but they are set apart or appropriated for the specific purpose of building a courthouse and cannot be diverted from the purpose for which it is levied. *Kirk* v. *High,* 169 Ark. 162, 273 S. W. 389; *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006; and *Lake* v. *Tatum, ante* p. 90.

In *Pioneer Construction Co.* v. *Madison County,* 174 Ark. 298, 296 S. W. 729, a holder of the county warrants of Madison County brought before us the question of whether or not Amendment No. 11 should be interpreted

as making it mandatory in all cases upon county courts to issue interest-bearing bonds where there was a valid outstanding indebtedness of the county at the time the amendment was adopted. This case involved the consideration of the proviso in Amendment No. 11, which reads as follows:

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness, or bonds with interest coupons, for the payment of which a county or city tax, in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law, until such indebtedness is paid."

It was contended that the word "may" should be construed as "must," under the rule of construction in *Washington County* v. *Davis*, 162 Ark. 335, 258 S. W. 324, that, whenever the rights of the public or third persons depend upon the exercise of a power or the performance of a duty to which the word "may" refers, it should be construed to mean "shall." We recognized that the word "may" is construed as "shall" or "must" where the context or subject-matter compels such construction, but we held that the word "may," as used in the proviso to Amendment No. 11, gave a discretion to be exercised by the county court in the issue of interest-bearing bonds to pay the indebtedness of the county existing at the time the amendment was adopted.

Again, in *Polk County* v. *Mena Star Co., ante* p. 76, the court had under review whether or not the county court of Polk County had abused its discretion in refusing to issue bonds in payment of valid warrants outstanding at the time of the adoption of Amendment No. 11. Under the facts of that case it was shown that the county court was, in good faith, endeavoring to pay such outstanding warrants out of the five-mill tax levy for general county purposes, and that it was actually making material progress in the payment of such outstanding warrants. The evidence showed that, if the

affairs of the county were economically and judiciously administered, the warrants outstanding at the time of the adoption of Amendment No. 11 could be paid within a reasonable time under a five-mill tax levy for general county purposes, and that, at the same time, the annual budget of the county for the expenses of administering its affairs and running its government could also be met. Under these circumstances we held that the county court did not abuse its discretion in refusing to issue bonds under Amendment No. 11 and to make an additional tax levy of not exceeding three mills with which to pay them.

In the case at bar we have an entirely new phase of the question presented to us. The record contains an affirmative showing, upon undisputed facts, that the ordinary governmental expenses of the county will require a maximum tax levy of five mills annually, or, in other words, that the annual budget of the county for its governmental expenses will absorb all of the maximum levy for taxation which can be made under the Constitution for general county purposes. This will leave nothing for the payment of the warrants outstanding at the time of the adoption of the amendment. Thus it will be seen that one of the objects of the amendment will be defeated, if it be held that the county court, at will, may refuse to issue bonds, under any circumstances, for the payment of the county indebtedness existing at the time of the adoption of the amendment. In all cases involving the interpretation of the amendment we have recognized that there were two controlling purposes in the minds of the framers of the amendment. One of them was to pay the running expenses of the county government out of the taxes levied annually, for county purposes, and not to permit the county, under any circumstances, to go in debt beyond the amount of money they could derive from the maximum amount that could be levied under the Constitution for general county purposes. The other object was to provide for the payment of the existing indebtedness at the time of the adoption of the

amendment. As we have already seen, the question of issuing interest-bearing bonds or not for the payment of this outstanding indebtedness was left to the discretion of the county court; but the discretion given the county court was not one to be exercised at will, but it was subject to judicial review. Under the facts of this particular case it became the imperative duty of the county court to use the power conferred upon it under the provision of Amendment No. 11 to carry out the intention of the framers of the amendment, and its action in failing to do so is the subject of judicial review. The principle here decided was recognized in *Julius* v. *The Bishop,* 42 Law Times Reps. 546. In that case the court had under consideration the words "it shall be lawful," and said that they were words making that legal and possible which there would be no right or authority to do. Continuing, the Lord Chancellor said:

"They confer a faculty or power, and they do not of themselves do more than confer a faculty or power. But there may be something in the nature of the thing empowered to be done, something in the object for which it is to be done, something in the conditions under which it is to be done, something in the title of the person or persons for whose benefit the power is to be exercised, which may couple the power with a duty, and make it the duty of the person in whom the power is reposed to exercise that power when called upon to do so. Whether the power is one coupled with a duty such as I have described is a question which, according to our system of law, speaking generally, it falls to the Court of Queen's Bench to decide on an application for a mandamus."

We think the quotation from that case is applicable to the question which has to be considered in the case at bar, and are of the opinion that, when the facts of this particular case are read in the light of our former decisions interpreting the amendment, and considered in the light of what we have here said, the county court abused its discretion, and that its action was arbitrary in law. The circuit court should have issued a writ of

mandamus to compel it to issue interest-bearing bonds in payment of the indebtedness of the county existing at the time of the adoption of Amendment No. 11. Therefore the judgment of the circuit court will be reversed, and the cause will be remanded with directions to the circuit court to grant the writ of mandamus as prayed for, and for further proceedings according to law. It is so ordered.

HUMPHREYS, J., not participating.

SMITH, J., dissenting.