Ellen CASEY, Benton County, Delinquent Tax Collector
*v.* SCOTT PAPER COMPANY

80-275                                    613 S.W. 2d 821

Supreme Court of Arkansas
Opinion delivered April 13, 1981

*David S. Clinger*, Pros. Atty., for appellant.

*Wright, Lindsey & Jennings and Croxton & Boyer*, for appellee.

STEELE HAYS, Justice. Scott Paper Company is a manufacturer of "limited life," non-woven products made from rayon and polyester at its plant at Rogers, Arkansas. Scott commenced its Rogers operation in 1974 and requested a tax exemption pursuant to Amendment 12 of the Arkansas Constitution and Ark. Stat. Ann. § 84-208, enacted in furtherance of the amendment. The exemption was granted for 1974 and 1975 by the Assessor of Benton County; however, when that office changed hands the successor in office disallowed the exemption upon the determination that it applied only to cotton fibers or to fiber goods which existed in 1926, when Amendment 12 was adopted.

Scott contested the disallowance and the delinquent tax collector filed suit to recover $60,404.35 in taxes assessed against the equipment. The trial court held that Scott's Rogers plant was a textile mill for the manufacture of fiber goods and that rayon and polyester were fibers within the language of Amendment 12, and, therefore, entitled to the exemption. Appellant appeals on two points: that the court erred as a matter of law in applying the exemption to a textile mill using only rayon and polyester raw materials and that there was no substantial evidence to support the judgment. We find no error by the trial court and, accordingly, we affirm the judgment below.

Amendment 12 to the Arkansas Constitution provides:

All capital invested in a textile mill in this State for the manufacture of cotton and fiber goods in any manner shall be and is hereby declared to be exempt from taxation for a period of seven years from the date of the location of said textile mill.

Ark. Stat. Ann. § 84-208 effectuates the purpose of Amendment 12 and applies to property used exclusively in the business of manufacturing "cotton or other fiber goods in any manner. . . ."

The settled rule of interpreting our Constitution was well stated in *Jackson* v. *Madison County*, 175 Ark. 826, 300 S.W. 924 (1927) where we said:

> . . . it is the duty of the courts to give effect to all provisions of an amendment and harmonize them by construing the language used according to its natural and ordinary meaning. . . .
> *Jackson*, at 829.

Witnesses for Scott testified that the Rogers plant produced non-woven goods from rayon and polyester fibers chemically bonded together with a latex. The goods are designed for single usage, such as disposable diapers, or limited usage, as in operating rooms and hospitals. Several witnesses, including the head of the Textile Department of Clemson University, testified concerning the history of the textile industry and characterized Scott's operation as a textile mill; that rayon and polyester were "fibers," capable of being woven; and that the materials produced by Scott were "fiber goods." In short, there was ample evidence to support the findings of the trial court that the manufacturing process of Scott came within the ordinary meaning of the term "textile" and that rayon and polyester came within the definition of "fibers."

Appellant insists that there is no evidence that what Scott does now would have been regarded as textile manufacturing in 1926, that rayon and polyester were not commercially produced in Arkansas until 1955 and, hence, these words were nonexistent in the vocabulary of the framers of Amendment 12; therefore, they could not as a matter of law have come within the meaning of the word "fiber" as it was then used and understood. We must reject this constrictive concept of construction, as it would require giving words an extraordinary usage rather than ordinary and natural meaning the law requires. *Jackson* v. *Madison County,*

*supra.* Furthermore, the argument is predicated entirely on surmise — that because rayon and polyester were not commercially produced in Arkansas until 1955, the drafters of our laws could not have known of them. We are unwilling to elevate that supposition to the level of fact. This is not proof that synthetic fibers were unknown and unheard of in textile manufacturing in 1926.

The argument is pressed upon us that textile manufacturing in 1926 was almost entirely a process of spinning, knitting or weaving, whereas Scott's method uses none of these, but rather, it bonds the fibers chemically. Unquestionably that is so, but there is no suggestion from the amendment that it was this process that the exemption sought to enhance. Rather, it is evident from the amendment itself that the intent is broad, as the exemption purports to apply to the *"manufacture* of cotton and fiber goods *in any manner."* (Emphasis supplied.)

Appellant insists that Amendment 12 contains ambiguities that can be clarified only by referring to the historical setting of the amendment and, hence, to extrinsic evidence. Appellant cites us to the ballot title by which the electorate acted on the proposed amendment at the general election of 1926:

> Purpose of the Amendment is to exempt from taxation, for a period of seven years, all capital invested in textile mills manufacturing cotton goods.

But the obvious fact is that the ballot title is poorly drawn and should have read "cotton *and fiber* goods" in accordance with the proposal as adopted by the legislature. The two versions cannot be reconciled and to adopt appellant's argument would require that we give dominance to the wording of the ballot title and subservience to the clear wording of the amendment itself. When the wording of an enactment is self-evident, we need not look elsewhere to determine the meaning and intent. *Ellison* v. *Oliver*, 147 Ark. 252, 227 S.W. 586 (1921); *Weston* v. *State*, 258 Ark. 707, 528 S.W. 2d 412 (1975).

Certainly any interest in the 1920s in attracting textile manufacturers to Arkansas would be expected to involve cotton primarily. But if, as we perceive, the objective was to increase employment, then the means employed to attract manufacturers would doubtless be expansive rather than restrictive. We agree with the trial court that whatever the state of knowledge may have been in 1926 concerning the textile industry and the use of synthetics, it would nevertheless have been a simple matter for the language of Amendment 12 to limit the exemption to cotton fibers, or natural fibers, had that been the intent.

We are entirely satisfied that the words: "a textile mill . . . for the manufacture of cotton and fiber goods in any manner" when taken in their natural and ordinary meaning, are inclusive of non-woven polyester and rayon fabrics. We agree with the trial court's dismissal of the appellant's suit and we affirm that decision.