Mildred F. HARDESTER *v.* Robert W. EUBANKS, III,
Insurance Commissioner for the State of Arkansas

87-42                                                            731 S.W.2d 780

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Cliff Jackson, P.A.*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

ROBERT H. DUDLEY, Justice. Appellant Mildred Hardester owned and operated the White River Catfish Inn which was destroyed by fire in October 1983. The Union Indemnity Insur-

ance Company of New York had issued its policy insuring the structure for $190,000.00, insuring the contents for $80,000.00, and insuring against lost profits for $42,000.00. The total coverage under the policy was $312,000.00. In the summer of 1984 the insurance company paid Madison Guaranty Savings and Loan Association, the mortgagee and the loss payee under the policy, the sum of $99,523.00 in partial satisfaction of its claim. No payment was made to appellant Hardester. On April 22, 1985, the insurance company's certificate of authority to issue insurance in Arkansas was suspended by the Arkansas Insurance Commissioner. Upon petition, the Circuit Court of Pulaski County appointed appellee Robert W. Eubanks, III, the insurance commissioner, as ancillary receiver for the insurance company, and directed him to take charge of all property of the company in Arkansas. As ancillary receiver Eubanks notified all potential claimants for the receivership and, in response, appellant Hardester filed a timely claim for money remaining due under the policy. In June 1986, Eubanks, as ancillary receiver, filed this action by interpleading the sum of $200,477.00 into the registry of the court, allegedly in full payment of the $300,000.00 limit the receiver would be liable for under the provisions of the Arkansas Property and Casualty Insurance Guaranty Act, Ark. Stat. Ann. §§ 66-5501 to -5519 (Repl. 1980). The receiver contended that by virtue of the previous payment of $99,523.00 by the insurance company and the $200,477.00 interpleaded, the full $300,000.00 due under the Guaranty Act had been tendered. The trial court held that the $200,477.00 interpleaded was sufficient to discharge the receiver's obligation under the Guaranty Act, and in so holding, denied appellant Hardester's claims for $4,659.00 in unearned premiums, $12,000.00 in unpaid benefits under the policy, and $25,049.86 which appellant Hardester paid to Madison Guaranty in satisfaction of appellant's remaining debt to Madison. We affirm, but modify, that ruling.

Ark. Stat. Ann. § 66-5505 (Repl. 1980) limits the liability of the Arkansas Property and Casualty Insurance Guaranty Fund to $300,000.00. The trial court held that the amount due from the Fund was reduced by the $99,523.00 paid by the company months before its certificate of authority was revoked. The appellant contends that the trial court erred in

reducing the amount the Fund owes by the amount the company previously paid. The argument is meritorious. The applicable statute, § 66-5505(2) provides that a covered claim "is an *unpaid claim* of an insured. . . ." Thus the fund is entitled to credit only for payment of unpaid claims. The unpaid claim is the amount remaining due. Nothing in the act even hints that claims against the fund should be reduced by an amount paid by the insurer before it became insolvent.

■ In their briefs, both parties make policy arguments favoring their proposed construction, or interpretation, of the act. There is no need to discuss the policy arguments because where the wording of a statute is plain, unambiguous, and self-evident, there is no room left for construction or interpretation. *Casey* v. *Scott Paper Co.*, 272 Ark. 312, 613 S.W.2d 821 (1981). We accordingly modify the holding of the trial court so that the Fund is not entitled to an off-set for amounts previously paid by the company.

■ However, that modification does not mean that appellant is automatically entitled to all that she claims because a covered claim must be within the limits of the policy. Ark. Stat. Ann. § 66-5505(2) (Repl. 1980). In this case the policy limit was $312,000.00. The company paid $99,523.00, which left $212,477.00 owing under the limit. The Fund tendered $200,477.00 which was $12,000.00 short of the limit. Therefore, $12,000.00 more is owing to appellant under the policy limit.

■ In addition, the appellant is entitled to a refund of $4,659.00 for unearned premiums. Again, the reason is that the applicable statute is clear. It provides: " 'Covered claim' shall also include one hundred percent (100%) of unearned premiums." Ark. Stat. Ann. § 66-5505(2) (Repl. 1980). Unearned premiums are in the nature of a refund of premium and do not come within the concept of payment under the policy. Thus, they do not count against the policy limit and must be repaid to appellant.

The appellant claims an additional $25,000.00 is due to her but such a claim is without merit because that amount would be beyond the policy limits.

The decree of the trial court is affirmed as modified, and the

trial court is directed to enter an order consistent with this opinion.

HICKMAN, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I believe the majority has focused too narrowly on the term "covered claim," ignoring the intent behind the "Property and Casualty Insurance Guaranty Act." Ark. Stat. Ann. § 66-5501 et seq. (Repl. 1980). The purpose is to provide protection from insolvent insurance carriers by creating a fund contributed by other carriers and, indirectly, by the public. The act places a ceiling of $300,000 on "covered claims" so as to provide a wider distribution of recovery among existing claimants. The act expressly provides that individual covered claims "*shall*" be limited to $300,000 and "*Shall not include any amount in excess of $300,000.*" (My emphasis). Considering the overall intent and spirit of the act I do not believe it was intended to exclude amounts advanced to the insured on a particular loss which is still being processed at the time insolvency occurs. The fact that one claim has been partially processed at the time of insolvency and an interim payment made, should not give that claimant a preference over another claimant of equal standing. Under that approach, claimants whose losses may have occurred simultaneously, or even previously, to Ms. Hardester but who are still unpaid at insolvency are limited to $300,000, whereas Ms. Hardester is not. That was not the purpose of the act. I believe the trial court should be affirmed.